IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0966-05






JOSE PENA, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


LEON COUNTY





 Meyers, J., filed a dissenting opinion.


 Three weeks ago, this Court decided Villescas v. State. No. PD-0531-05, 2006
Tex. Crim. App. LEXIS 682 (Tex. Crim. App. 2006). In that case, we granted the State's
petition for discretionary review to determine whether the State's notice of its intention to
enhance the defendant's primary offense was timely. However, instead of addressing the
issue of timeliness, the Court undertook a federal due process analysis, deciding that the
appellant's constitutional rights had not been violated by the State's notice of
enhancement six days before trial. (1) 

 I find it ironic that, without blinking an eye, the majority today reprimands the
Tenth Court of Appeals for ruling on a constitutional question not briefed by the parties
when that is the very action it took in resolving Villescas. In the instant case, the majority
notes that Appellant's contention on appeal was that the trial court "erred in admitting
testimony of test results concerning alleged marijuana when this material evidence and
the original file concerning this evidence had been destroyed or lost prior to trial and
without independent testing." In considering this claim, the court of appeals addressed
whether the Texas Constitution's Due Course of Law Clause afforded Appellant greater
protection than the United States Constitution's Due Process Clause. The majority holds
that the court of appeals erred in failing to allow the parties to brief this particular issue. 

 At trial, defense counsel argued in his motion to suppress that the admission of the
test results and the testimony surrounding them would violate his due process rights
guaranteed by both the United States Constitution and the Texas Constitution. Thus, the
issue of a violation of Appellant's rights under the Due Course of Law provision was
raised and preserved at trial. Furthermore, the Tenth Court of Appeals has now addressed
the relationship between the respective due process clauses of the federal and state
constitutions for the purposes of this case, resolving that the Texas Due Course of Law
provision provides greater protection with regard to the loss of "evidence that has
apparent exculpatory value." Pena v. State, No. 10-03-00109-CR, 2005 Tex. App.
LEXIS 3192, *17 (Tex.App.-Waco 2005). As this issue is now properly before us, and
no statute or caselaw precedent requires us to send the case back to the court of appeals, it
violates common sense and judicial economy to remand it. (2) I respectfully dissent from
the Court's judgment.

 Meyers, J.

Filed: April 26, 2006 

Publish
















Exhibit "A"



















IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




NO. PD-0531-05





FRANCISCO VILLESCAS, Appellant


v.


THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE EIGHTH COURT OF APPEALS


EL PASO COUNTY




 


 I believe that the majority has somewhat misstated the ground in the petition for
discretionary review and incorrectly interpreted the law surrounding the issue raised. 
Relying on the 1962 United States Supreme Court case Oyler v. State, (3) the majority
concludes that the State's enhancement notice was timely because it satisfied federal due
process requirements by alleging the enhancement before the punishment phase of trial. 
Not only does the majority overstate the reach of Oyler, it applies it to the dissimilar
circumstances of Villescas v. State, (4) drawing an incongruent analogy. Furthermore, in
reaching its decision, the Court cites the fact that Appellant ultimately received a
continuance as evidence that the State's notice of its intention to enhance the primary
offense was timely. Lastly, the majority holds that all claims involving the timeliness of
the State's enhancement notice, whether alleging a constitutional violation or not, should
be subject to constitutional standards when conducting a harm analysis. I would also
reverse the Court of Appeals, but for different reasons.

BACKGROUND

Trial Court and Court of Appeals

 Appellant was charged by indictment with attempted sexual assault. Six days
before trial, and nine days before the commencement of the punishment hearing, the State
filed a "Notice of Enhancement," in which it expressed its intent to seek an enhanced
sentence under section 12.42(a)(3) of the Texas Penal Code based on Appellant's prior
felony conviction. Defense counsel twice objected to the State's enhancement notice. 
Upon his first objection prior to jury selection, the trial court deferred argument on the
issue until the parties reached the punishment phase of the trial. Upon his second
objection at the beginning of the punishment hearing, the trial court withheld ruling and
entered a plea of not true to the enhancement allegation on Appellant's behalf. During
the punishment phase, Appellant was confused about the process by which his
fingerprints were compared to prior judgments, and the trial court recessed the case until
the following week to allow time for explanation. When the trial court resumed the
proceeding, defense counsel explained that Appellant now understood the fingerprint-
comparison procedure. Appellant maintained his plea of "not true" to the enhancement
paragraph, but stipulated to the prior convictions, including the prior felony conviction
alleged for enhancement. The trial court found the enhancement allegation to be true and
sentenced Appellant to eighteen years' imprisonment, a sentence within the range of
punishment for a second-degree felony. (5)

 One issue before the Eighth Court of Appeals in Villescas was whether the trial
court erred in allowing an enhanced punishment because the State failed to provide timely
notice that it would seek the enhancement. Relying on precedent that a defendant is
entitled to notice of a prior conviction being used for enhancement (6) and on the
presumption among several courts of appeals that ten days before trial is reasonable
notice, (7) the Court of Appeals determined that the State's notice was untimely. The Court
of Appeals explained that the timeliness of notice should be measured within the time
frame prior to trial, since the purpose of the notice requirement was to aid the accused in
preparation for a trial on the issue. It also reasoned that the State's notice of six days was
insufficient because there was evidence that Appellant was surprised and unprepared in
his defense with respect to the alleged prior convictions. Having determined that the
State's notice of intent to seek an enhanced punishment was untimely, the Court of
Appeals concluded that Appellant suffered substantial harm (8) in the form of a sentence
outside the ten-year maximum for a third-degree felony due to the enhancement.

ANALYSIS 

 In its petition for discretionary review, the State argues that the Court of Appeals
erred by failing to consider all of the particular circumstances of this case in concluding
that the State's enhancement notice was not timely. In particular, the State contends that
the Court of Appeals did not take into account the fact that the trial court remedied
Appellant's confusion regarding the fingerprint-comparison procedure by granting a one-week continuance. The State's position is that the continuance cured the only cited
adverse consequence of the timing of the notice. The State does not expressly advance or
rely on a due process argument in claiming that its notice was timely. Similarly, rather
than undertaking a due process analysis, the Court of Appeals evaluated the
circumstances of the case in relation to decisions from this Court and the lower courts of
appeals in holding that the State's notice was untimely. Instead of staying focused on the
question granted in the petition for discretionary review-whether the State's notice of
intent to enhance was timely- the majority makes this a case about federal due process.

 Although due process is implicated in this case and others involving the timeliness
of the State's notice of enhancement, this is not the issue raised by the State in its petition
for discretionary review. In holding that the State's notice of enhancement was sufficient,
the majority relies almost exclusively on Oyler, the United States Supreme Court case
establishing that due process does not require advance notice that the trial for the
substantive offense will be followed by an accusation that the defendant is an habitual
offender. 368 U.S. at 453; see Almendarez-Torres v. United States, 523 U.S. 224, 244
(1998); Parke v. Raley, 506 U.S. 20, 28 (1992). In Oyler, the Supreme Court determined
that due process may be satisfied even though the State does not give its notice of
enhancement until the punishment phase of trial, as long as the defendant has a
reasonable opportunity to respond to the recidivist charge. 368 U.S. at 452 (explaining
that a defendant must receive "reasonable notice and an opportunity to be heard relative
to the recidivist charge even if due process does not require that notice be given prior to
the trial on the substantive offense."). The defendants in Oyler had reasonable notice
because the State informed them of its intention to seek enhancement at the start of the
punishment phase, and they had an opportunity to be heard because they acknowledged in
open court that they were the same persons who had previously been convicted. Thus, no
due process violation occurred. Indeed, the Supreme Court made clear that the
petitioners' failure to object or seek a continuance on the ground that they had not
received adequate notice was the reason they were estopped from later asserting the claim
that they had not been given a fair opportunity to respond to the allegations used for
enhancement. Id. at 453. 

 The facts surrounding Appellant's case are dissimilar. Appellant's attorney twice
lodged objections to the State's notice of intent to seek an enhanced sentence, and it was
the trial judge who continued to defer ruling on this matter. Furthermore, Appellant
persisted in his plea of not true to the enhancement paragraphs. Most notably, the
defendants in Oyler were apprised of the enhancements by a separate information after
the conclusion of trials in which their sentences were deferred. The West Virginia statute
at issue in Oyler provided the defendants with a separate jury trial on the issue of identity
if they denied being the person in the information alleging the enhancement or just
remained silent, whereas Appellant was sentenced by the same jury that decided his guilt. 
Oyler entertained a particular set of facts and did not speak to scenarios in which a
defendant contests the State's notice of intent to seek enhancement and indicates that he
needs more time within which to prepare, and it did not address the situation of a unitary
trial in which the same jury decides guilt and punishment in two separate phases. Oyler
was a case in which the defendants basically procedurally defaulted their ability to
challenge the enhancement, and it effectively left room for the situation in which notice
before the punishment phase would not satisfy due process.

 Our role in the instant case is not to determine whether Appellant's due process
rights were abridged, but to decide whether the State's filing of its notice to enhance
punishment was timely. The Supreme Court's holding in Oyler does not stand for the
proposition that notice of intent to enhance is timely as long as it is received prior to the
punishment proceeding, as the majority suggests. The majority basically dismisses the
timeliness issue by saying that the State's notice, which was given six days before the
beginning of trial, was "substantially more than the notice minimally required to satisfy
due process." Majority Opinion at *8. Again, the majority misinterprets Oyler and
confuses the issues of timeliness and due process by treating them as if they were one and
the same. If Oyler stood for the proposition that timeliness requirements were satisfied as
long as the State gave notice at the beginning of the punishment phase, then an entire
jurisprudence would not exist. Indeed, it is noteworthy that Oyler has never been cited in
any Texas case dealing with the timeliness of the State's notice of enhancement, in light
of the fact that its due process holding would have been applicable to this issue beginning
with our 1997 decision in Brooks v. State, which allowed the State to give notice of
enhancement outside of the indictment. (9) The majority should have focused specifically
on the question of timeliness, rather than delving into a constitutional analysis not
employed by the Court of Appeals, in which it conflates notice and timeliness. See Rich
v. State, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005) (explaining that since the appellant
did not contest the Court of Appeals' application of the standard for nonconstitutional
error, we would assume that it was the proper rule).

 In failing to address the issue presented for review, the majority misses the
opportunity to provide guidance to both the lower courts, which have increasingly
encountered this issue, and the State, as to what constitutes timeliness in seeking an
enhanced sentence. The message that the majority sends is that as long as the State files
its notice of enhancement before punishment, that notice is timely. The majority has
essentially done away with the issue of timeliness by substituting due process, (10) and it has
created a precedent that could make every notice issue, including a motion to quash, one
of constitutional dimension.

 The Court of Appeals applied the correct procedures in evaluating the merits of
Appellant's claims, although it reached the wrong conclusion. First, the Court of Appeals
examined whether the State's notice was timely, given the circumstances of the case. 
Second, only after having determined that the State's notice was untimely did it undertake
a harm analysis. Timeliness must be measured at the time the State files its notice, or
expresses its intention, to seek an enhanced sentence, and it makes sense to require that
the notice be before trial. We said in Brooks (11) that a defendant is entitled to notice of the
State's intention to enhance, and there is a presumption among the lower courts that ten
days prior to trial is reasonable. (12) Proper notice constitutes a "description of the judgment
of former conviction that will enable [the accused] to find the record and make a
preparation for a trial of the question whether he is the convict named therein." Hollins v.
State, 571 S.W.2d 873, 875 (Tex. Crim. App. 1978) (citing Morman v. State, 75 S.W.2d
886 (1934)). Proper notice also affords the defendant the opportunity to determine if the
prior offenses are being correctly characterized by the State, in terms of their substance
and finality, and it gives an attorney the opportunity to voir dire potential jurors on
punishment issues. It is common sense to require the State to give its notice of
enhancement before the commencement of proceedings, especially when there is a unitary
trial.

 The lower courts of appeals have addressed the issue of timeliness, and their
decisions offer some direction in evaluating Appellant's claim. Notably, this
jurisprudence on timeliness has evolved in the lower courts as a result of our decisions in
Ex parte Patterson, 740 S.W.2d 766 (Tex. Crim. App. 1987), in which we allowed the
intent to seek a deadly weapon finding to be pleaded outside of the indictment, and
subsequently in Brooks, in which we allowed the intent to seek sentence enhancement to
be pleaded outside of the indictment. While the Waco appellate court has adopted a
bright-line rule requiring ten days' notice of the State's intention to enhance before the
guilt phase of trial, (13) other courts have considered the facts of each case, including how
close to trial the defendant was informed of the State's decision to seek enhancement and
whether the defendant expressed surprise or the need for additional time in which to
prepare. The instant case gives this Court an opportunity to provide guidance to the lower
courts as to how to evaluate the timeliness of the State's notice of enhancement. Because
the facts of every case are different, I believe such claims should be addressed by
evaluating the totality of the circumstances, rather than mandating a bright-line rule.

 Based on the totality of the circumstance of this case, it seems that the State was
not timely in providing notice for the following reasons. First, the notice was only six
days before trial, including four business days and two weekend days. Notice of
enhancement, like notice in other instances, should be given before trial in order to be
timely, and a ten-day presumption, although not definitive, provides a starting point for
our analysis that must be considered in relation to the other facts of the case. See
Fairrow, 112 S.W.3d 288 (holding that the State's oral admonishment on the day of trial
did not afford the defendant proper notice of intent to enhance punishment); Hudson v.
State, 145 S.W.3d 323 (Tex. App.-Fort Worth 2004, pet. ref'd) (holding that notice was
unreasonable when given during the guilt phase of trial six days before the punishment
phase began); Cf. Fugate v. State, No. 2-04-548-CR, 2006 Tex. App. LEXIS 1948 (Tex.
App.-Fort Worth 2006) (holding that the State's notice of seven days before trial was
sufficient because the appellant was aware that the State had pen packets on his prior
convictions and could use them for enhancement); Castilla v. State, No. 05-01-01776-CR,
2002 Tex. App. LEXIS 7263 (Tex. App.-Dallas Oct. 10, 2002, no pet.) (not designated
for publication) (holding that State gave "ample notice" by filing ancillary pleadings
seven days before trial).

 Second, defense counsel objected at both the guilt stage and the punishment stage
of trial, saying that the notice was untimely and indicating that he needed additional time
in which to prepare. See Sears, 91 S.W.3d 451 (considering the attorney's objection to
the enhancement in holding that notice given the Friday before the Monday trial began
was untimely); Cf. Williams v. State, 172 S.W.3d 720 (Tex. App.-Fort Worth 2005, pet.
ref'd) (holding that eight days' notice before trial was reasonable based in part on the
absence from the record of any surprise or lack of preparation on the part of the
defendant). Although the trial judge granted a continuance during the punishment phase
because he observed Appellant's confusion with the fingerprint-comparison procedure,
this recess did not have the effect of transforming the State's untimely notice into timely
notice. Third, Appellant maintained his plea of not true to the enhancement paragraph
throughout the proceedings. See Barnes v. State, 152 S.W.3d 144 (Tex. App.-Dallas
2005, no pet.) (holding that notice seven days before trial was reasonable where
defendant said that he had ample notice and pleaded true to the enhancement paragraphs). 
Appellant never indicated that he believed the notice was timely, and he preserved this
issue for review on appeal. A consideration of the aforementioned circumstances reveals
that the State's notice was not timely as measured from the date that it first gave notice
and defendant first objected.

 Having established that the State's notice was untimely, it is necessary to
determine whether the trial court committed reversible error. The Court of Appeals relied
on Texas Rule of Appellate Procedure 44.2(b) in conducting its harm analysis. The

majority asserts that the Court of Appeals should have used the constitutional standard for
its harm analysis because the notice requirement flows from the fundamental precepts of
due process and due course of law. Again, while there may be a constitutional component
to the claim that the State did not provide timely notice of its intention to enhance,
Appellant did not advance such a claim. On appeal, the Court of Appeals considered the
issue "whether the trial court erred in allowing an enhanced punishment because the State
failed to provide timely notice that it would seek to enhance punishment." Villescas, No.
08-03-00131-CR, 2005 Tex. App. LEXIS 1118, at *1. Since Appellant did not allege a
due process violation, the Court of Appeals correctly applied the nonconstitutional
standard for reversible error to its harm analysis. The court of appeals in Fairrow
undertook a similar approach. After concluding that the State's notice of intent to
enhance was not timely, it explained that since the appellant argued that the sentencing
was outside the range allowed by statute, it would "conduct the harm analysis of statutory
errors as a species of 'other errors' under rule 44.2(b)." Fairrow, 112 S.W.3d at 295. 
The court of appeals declined to use the constitutional standard under Rule 44.2(a)
because "Appellant does not argue that the trial court's error violated a constitutional
provision." Id. On the other hand, the error in Sears was constitutional because the
appellant had claimed that "the trial court violated his due process right to notice under
the Sixth and Fourteenth Amendments to the United States Constitution when it allowed
the State to present enhancement evidence over [his] objection that he had received
inadequate notice of the State's intent to offer the evidence." 91 S.W.3d at 453. 
Therefore, the Sears court of appeals applied Rule 44.2(a) in conducting its harm
analysis. In the instant case, although I agree with the Court of Appeals that the State's
notice was untimely, I believe that the trial court's decision to recess the court gave
defense counsel time to prepare for his defense against the prior conviction used for
enhancement. Thus, whatever harm Appellant suffered as a result of the State's untimely
notice was cured by the recess, even though it was not granted in response to defense
counsel's objection.CONCLUSION

 Although Oyler is instructive in determining whether Appellant's due process

 rights were violated based on the State's notice of enhancement, the case is not
conclusive as to the question of when notice is timely. Oyler does make clear that notice
before the punishment phase of trial, rather than the guilt phase, may satisfy due process;
however, it is careful to disclaim that this will satisfy due process in all cases, and it does
not mention the particular issue of timeliness of notice. Our own caselaw is more
instructive in determining whether notice is timely in a given situation. Based on the
totality of the circumstances, I would have affirmed the Court of Appeals' decision that
the State's notice was untimely. However, after undertaking a Rule 44.2(b) analysis of
Appellant's nonconstitutional claim, I would have concluded that the untimely notice was
cured by the trial court's one-week recess. Given that the majority has conflated issues of
timeliness and notice in an analysis that unnecessarily relies on due process and that is
unresponsive to the issue granted in the State's petition for discretionary review, I can
only concur in its decision.

 Meyers, J.








1. As a matter of context, I have attached as Exhibit "A" a copy of the concurring opinion
which I prepared but never issued in Villescas.
2. It appears that Judge Hervey has made up her mind that the Due Course of Law Clause
in the Texas Constitution does not offer greater protection than the Due Process Clause of the
United States Constitution. Dissenting Op., at *1 ("The Tenth Court of Appeals read into this
state constitutional provision a specific right, broader than that provided by its federal
counterpart in the United States Constitution's due process clause, that had gone completely
unnoticed for over 150 years.") Judge Hervey even cites Presiding Judge McCormick's
concurrence in Jimenez v. State as support for her position. 32 S.W.3d 233, 242 (due process
clause in federal constitution and due course of law provision in state constitution mean the same
thing).
3. 368 U.S. 448 (1962).
4. No. 08-03-00131-CR, 2005 Tex. App. LEXIS 1118 (Tex. App.-El Paso Feb. 10, 2005,
pet. granted).
5. Attempted sexual assault is a third-degree felony. Under the Texas Penal Code, "[i]f it is
shown . . . on the trial of a third-degree felony that the defendant has been once before convicted
of a felony, on conviction he shall be punished for a second-degree felony." Tex. Penal Code §
12.42(a)(3) (Vernon Supp. 2004-05). While the range of punishment for a third-degree felony is
two to ten years' imprisonment, the range for a second-degree felony is two to twenty years. See
Tex. Penal Code § 12.34(a) and Tex. Penal Code § 12.33(a), respectively.
6. Brooks v. State, 957 S.W.2d 30 (Tex. Crim. App. 1997).
7. See, e.g., Sears v. State, 91 S.W.3d 451, 455 (Tex. App.-Beaumont 2002, no pet.), in
which the court of appeals said that notice is presumptively reasonable if given at least ten days
before trial, because this time frame is considered sufficient in a number of other instances
(citing Tex. Code Crim. Proc. Ann. art. 1.051(e) (Vernon Supp. 2002); Tex. Code Crim.
Proc. Ann. art. 28.10(a) (Vernon 1989); Campbell v. State, 456 S.W.2d 918, 920 (Tex. Crim.
App. 1970); Chimney v. State, 6 S.W.3d 681, 694 (Tex. App.-Waco 1999)).
8. See Tex. Rule App. Proc. 44.2(b).
9. Texas courts, including the Court of Criminal Appeals, have relied extensively on
Oyler's equal protection holding that "the State's decision to prosecute may not be deliberately
based upon unjustifiable standards such as race, religion, or other arbitrary classification." Oyler,
368 U.S. at 453. See also Green v. State, 934 S.W.2d 92, 103 (Tex. Crim. App. 1996); County v.
State, 812 S.W.2d 303, 308 (Tex. Crim. App. 1989); Satterwhite v. State, 726 S.W.2d 81, 84
(Tex. Crim. App. 1986).
10. Notably, we could have decided the recent case McNatt v. State, No. PD-0133-05, 2006
Tex. Crim. App. LEXIS 588 (Tex. Crim. App. 2006), differently based on the majority's decision
here. In McNatt, the court of appeals held that the appellant was denied due process because on
the day of the punishment trial, the State, through a motion for reconsideration, used a conviction
that was alleged solely as a jurisdictional enhancement in the indictment to enhance his sentence. 
152 S.W.3d 645 (Tex. App.-Texarkana 2004, pet. granted). The court of appeals also agreed
with the trial court that the State's letter notice of enhancement, sent eleven days before trial, was
untimely. Here in Villescas, the majority says that due process is the only relevant consideration
and that it is satisfied if notice of enhancement is given any time before punishment and the
defendant has a reasonable time within which to respond. If so, then the Court could have held
that the defendant in McNatt was not entitled to a new penalty hearing since due process was
satisfied by the state's giving some notice before the punishment hearing. Under the majority
opinion in the case before us, the separate issue of the timeliness of the notice is of no
consequence. In fact, the State would be prudent to ask for rehearing in McNatt in order to avoid
another punishment hearing, since due process is now the only violation that you can have.
11. 957 S.W.2d at 33 (holding that "prior convictions used as enhancements must be pled in
some form, but they need not be pled in the indictment - although it is permissible and perhaps
preferable to do so.").
12. Sears, 91 S.W.3d at 455 (explaining that ten days' notice is considered sufficient in a
number of instances, including the time appointed counsel is allowed to prepare; the time a
defendant is given, upon request, to respond to an amended indictment; and the time that a
probationer is entitled to be served with a motion to revoke). In addition to the Beaumont court
of appeals, the Fort Worth, El Paso, Amarillo, Texarkana, and Dallas courts of appeals have all
observed that ten days' notice is presumptively reasonable. See, e.g., Williams v. State, 172
S.W.3d 730, 734 (Tex. App.-Fort Worth 2005, pet. ref'd); Villescas, No. 08-03-00131-CR, 2005
Tex. App. LEXIS 1118, at *6; Lewis v. State, No. 07-04-0386-CR, 2005 Tex. App. LEXIS 3940,
at *4 (Tex. App.-Amarillo May 18, 2005, no pet.) (not designated for publication); McNatt, 152
S.W.3d at 651; Fairrow v. State, 112 S.W.3d 288, 294 (Tex. App.-Dallas 2003, no pet.).
13. See Hackett v. State, 160 S.W.3d 588 (Tex. App.-Waco 2005, pet. ref'd) (holding that
the State's notice of its intent to use prior convictions for enhancement was a de facto
amendment of the indictment, requiring a minimum of ten days' notice under Article 28.10(a) of
the Texas Code of Criminal Procedure).