Francisco **VILLESCAS**, Appellant,

v.

**The STATE of Texas.**

No. PD–0531–05.

Court of Criminal Appeals of Texas.

April 5, 2006.

291

KELLER, P.J., delivered the opinion of the Court in which PRICE, WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

The question in this case is whether the State's notice of intent to enhance punishment, given six days before trial began, was timely. We disagree with the Court of Appeals's analysis, and we therefore reverse its judgment.

## I. BACKGROUND

### A. Facts

Appellant was indicted for attempted sexual assault. The indictment contained no enhancement allegations. On February 18, 2003, six days before trial, the State filed and served upon appellant a "notice of enhancement," describing a prior burglary conviction that the State intended to use to elevate the punishment for the indicted offense to a second-degree felony.[1] On February 27, at the punishment phase of trial, defense counsel lodged several objections to the notice, including an objection that the notice was untimely. The trial court deferred ruling on the objection until after presentation of the evidence. During the hearing, the State obtained a set of appellant's fingerprints to compare with those found on judgments for the prior felony enhancement conviction and also for ten prior misdemeanor convictions. Appellant expressed confusion regarding the fingerprint comparison process, and he complained that defense counsel had not explained it to him. In response to this complaint, the trial court continued the proceedings for a week, resuming the punishment hearing on March 6.

At the March 6th hearing, defense counsel acknowledged that appellant now understood the fingerprint procedure and

Matthew "Mateo" Dekoatz, El Paso, for appellant.

Tom A. Darnold, Asst. D.A., El Paso, Matthew Paul, State's Attorney, Austin, for state.

1. *See* Tex. Pen.Code § 12.42(a)(3).

that he was "quite content with it." Neither appellant nor counsel claimed that more time was needed to prepare for any aspect of the punishment hearing. Appellant stipulated to the judgment of prior conviction, but persisted in his plea of "not true" to the enhancement allegation for the express purpose of preserving objections to the State's notice. During argument to the trial court, defense counsel pointed out that the burglary of a building offense was twelve years old and that the offense "would not be nearly as severe a crime today as it was at that point in time." [2] The trial court found the enhancement allegation true and sentenced appellant to eighteen years in prison.

## B. Court of Appeals

Appellant raised the timeliness complaint on appeal. Finding the complaint to have merit, the Court of Appeals reversed and remanded for a new punishment hearing.[3] The court observed that other courts of appeals have found that, with regard to other statutes, ten days notice is presumptively reasonable.[4] The court then observed that meeting this presumptive standard in the present case depended on what time period was used as the measurement,

since the notice was filed six days before trial, nine days before the beginning of the punishment hearing, and sixteen days before the evidence was actually offered.[5] In finding the notice of enhancement to be untimely, the Court of Appeals held that "the time frame prior to trial" was the only period of time that could be considered.[6] The court further held that appellant's confusion regarding the fingerprint comparison procedure constituted evidence that appellant "was surprised and unprepared in his defense with respect to the alleged prior convictions."[7] The appellate court then conducted a harm analysis, citing Rule 44.2(b), the standard for evaluating nonconstitutional error.[8] The Court of Appeals found that appellant was "substantially harmed" by the trial court's decision to allow the enhancement because the sentence was outside the range of punishment for a third degree felony (the punishment range for the unenhanced offense).[9]

## II. ANALYSIS

In *Brooks v. State*, we held that "prior convictions used as enhancements must be pled in some form, but they need not be pled in the indictment." [10] The Court of Appeals's use of the nonconstitutional

---

**2.** In 1991, burglary of a building with intent to commit theft was a second degree felony, but the Legislature lowered the offense to a state jail felony in 1994. *See* Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994 (modifying Tex. Pen.Code § 30.02(c)).

**3.** *Villescas v. State*, No. 08–03–00131–CR, slip op. at 3–7, 10, 2005 WL 327022 (Tex.App.-El Paso, February 10, 2005)(not designated for publication).

**4.** *Id.* at 5 (citing *Fairrow v. State*, 112 S.W.3d 288, 295 (Tex.App.-Dallas 2003, no pet.); *Sears v. State*, 91 S.W.3d 451, 455 (Tex.App.-Beaumont 2002, no pet.); Tex.Code Crim. Proc., Art. 1.051(e)(appointed counsel entitled to ten days to prepare); and Tex.Code Crim. Proc., Art. 28.10(a)(after notice and upon re-

quest, defense allowed ten days to respond to an amended indictment or information)).

**5.** *Id.* at 5–6.

**6.** *Id.* at 6.

**7.** *Id.*

**8.** "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b).

**9.** *Villescas*, slip op. at 7. *See* Tex. Pen.Code §§ 22.011(f)(sexual assault a felony of the second degree) and 15.01(d)(attempt offense is one category lower than the offense attempted).

**10.** 957 S.W.2d 30, 34 (Tex.Crim.App.1997).

standard for its harm analysis suggests that the court believes the violation of the *Brooks* notice requirement to be nonconstitutional error. Although the *Brooks* opinion did not explicitly refer to the source of the pleading requirement, it did make clear that the requirement did not flow from statutory provisions relating to the indictment,[11] and in fact, we are aware of no statute that requires this type of pleading. A clue to the source of the requirement, however, can be found in *Brooks's* citation to *Ex parte Patterson*.[12] *Patterson* discussed the somewhat similar status of deadly weapon allegations and characterized the issue as one of "notice" that is "firmly rooted in fundamental precepts of due process and due course of law—the right to be informed, at a bare minimum, that a particular proceeding (over and above the determination of guilt/innocence and sentence) will occur which may operate to further diminish the accused's liberty interest." [13]

This Court's previous pronouncements regarding the purpose of conveying proper notice of enhancement allegations are consistent with characterizing the pleading requirement as a right to notice rooted in due process:

> The accused is entitled to a description of the judgment of former conviction that will enable him to find the record and make preparation for a trial of the question of whether he is the named convict therein.[14]
>
> \* \* \*
>
> This averment is necessary in order to give the accused notice that a greater penalty is to be sought than for a first offense, and to enable him to take issue thereon, and if possible show there is a mistake in identity, or that there was no final former conviction or the like.[15]

In *Oyler v. Boles*, the United States Supreme Court addressed the due process requirements pertaining to notice of enhancement allegations.[16] There, the defendants were sentenced in West Virginia pursuant to a "three strikes" enhancement scheme, imposing a mandatory life sentence upon the third conviction of a crime punishable by confinement in a penitentiary.[17] The increased penalty was "to be invoked by an information filed 'immediately upon conviction and before sentence.'" [18] The defendants claimed that the scheme violated due process by depriving them of notice sufficient to afford an opportunity to prepare for and defend against the enhancement allegations.[19]

The Supreme Court upheld this scheme, holding that while some form of notice was required, the notice did not have to be given in advance of trial:

> Even though an habitual criminal charge does not state a separate offense, the determination of whether one is an habitual criminal is "essentially indepen-

---

11. *Id.* at 32.

12. 957 S.W.2d at 34 (citing *Ex parte Patterson*, 740 S.W.2d 766, 776 (Tex.Crim.App. 1987)).

13. 740 S.W.2d at 774 n. 7.

14. *Hollins v. State*, 571 S.W.2d 873, 875 (Tex.Crim.App.1978)(quoting *Morman v. State*, 127 Tex.Crim. 264, 75 S.W.2d 886 (1934)).

15. *Id.* (quoting *Palmer v. State*, 128 Tex.Crim. 293, 81 S.W.2d 76, 79 (1934)(quoting 12 Tex. Jur.2d 795)).

16. 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

17. *Id.* at 449, 82 S.Ct. 501.

18. *Id.*

19. *Id.* at 451–452, 453–454, 82 S.Ct. 501.

dent" of the determination of guilt on the underlying substantive offense. Thus, although the habitual criminal issue may be combined with the trial of the felony charge, "it is a distinct issue, and it may appropriately be the subject of separate determination." If West Virginia chooses to handle the matter as two separate proceedings, due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding. Nevertheless, a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense.[20]

The Court approved this practice even though it meant that the State's invocation of the enhancement was "first brought home to the accused when, after conviction on the substantive offense but before sentencing, the information [was] read to him in open court." [21] The Court rejected the defendants' due process claims because the defendants were represented by counsel and neither the defendants nor counsel sought "to raise any matters in defense" or to obtain "a continuance . . . to investigate the existence of any possible defense." [22]

In light of our prior cases and the Supreme Court's decision in *Oyler,* we conclude that the notice requirement dictated by *Brooks* is of constitutional origin, and we hold that the Court of Appeals erred in impliedly concluding otherwise. For this reason, we also disavow the appellate court's attachment of special significance to the time period of ten days. We have

no doubt that statutory time constraints are designed to safeguard constitutional notice rights in a manner that is easy for the parties to follow and for courts to apply, but in a review for constitutional error, the statutes are not controlling. The ultimate question is whether constitutionally adequate notice was given. We likewise reject the appellate court's conclusion that the relevant time period for determining proper notice is the period before trial. Under *Oyler,* due process does not even require that the notice be given before the guilt phase begins, much less that it be given a number days before trial. And limiting the notice period to "before trial" ignores the possibility that the trial court could take measures to cure the notice problem by granting a continuance— an option *Oyler* expressly contemplates.

■ In fact, the above discussion shows that when a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment phase satisfies the federal constitution. While this Court also addressed the Texas Constitution's Due Course of Law clause in *Patterson,* we did not hold that due course of law was more protective than due process with regard to the amount of time required for notice,[23] and we see no reason to do so now. In *Patterson,* the defendant learned of the State's intent to seek a deadly weapon finding "only after all the evidence was in, both sides had closed, and the charge was read to the jury." [24] It was in that context that we suggested that "no amount of uncontroverted evidence, however conclusive it may seem, will remedy the fact

20. *Id.* at 452, 82 S.Ct. 501 (internal citations omitted).

21. *Id.* at 450–451, 82 S.Ct. 501.

22. *Id.* at 454, 82 S.Ct. 501.

23. *See Patterson, passim.*

24. *Id.* at 777.

that applicant was given no prior indication that the nature of the weapon used was to be a particular issue in the case." [25]

■ Like the defendants in *Oyler*, appellant in this case had no defense to the enhancement allegation—he stipulated to the prior conviction. Nor did he suggest that a continuance was necessary to discover or prepare a defense, beyond the seven day continuance he had already received. Appellant received substantially more than the notice minimally required to satisfy due process. He was given notice six days before the beginning of trial, and he had an additional seven day continuance during the punishment hearing.

■ We must also disagree with the Court of Appeals's conclusion that appellant's confusion regarding the fingerprint comparison procedure established prejudice stemming from a lack of notice. The appellate court's statement that appellant "was surprised and unprepared in his defense with respect to the alleged prior convictions"—plural—indicates that the confusion about the fingerprint procedure had nothing to do with the timeliness of the enhancement allegation. Only one prior conviction was ever alleged for the purpose of enhancement. There was never any dispute about the ten misdemeanor convictions introduced into evidence. Even if the State had not sought to use the prior felony conviction, appellant would still have been confused about the fingerprint comparison procedure for the misdemeanor judgments. Moreover, appellant never lodged a notice objection to any of the convictions with regard to their admissibility into evidence.[26] The prior felony conviction would have been admissible at the punishment hearing under Article 37.07 even if it had not been used by the State for enhancement.[27] The fingerprint comparison issue was unrelated to the notice issue.

■ Even if appellant's confusion about the procedure had been relevant to his notice claim, though, the trial court cured that issue by granting a seven-day continuance. That period was more than enough time for defense counsel to explain the procedure to appellant, and in fact, the record shows that after the continuance appellant understood and was satisfied with the procedure.

In light of our discussion, we conclude that appellant was given sufficient notice of the enhancement allegation. The judgment of the Court of Appeals is reversed and the trial court's judgment is affirmed.[28]

JOHNSON, J., concurred in the result.

MEYERS, J., did not participate.

---

25. *Id.*

26. *See* Tex.Code Crim. Proc., Art. 37.07, § 3(g)(upon timely request, defendant entitled to notice of intent to introduce evidence of extraneous offenses at the punishment phase of trial).

27. Art. 37.07, § 3(a)(1)(prior criminal record admissible at the punishment phase).

28. A remand is unnecessary because there are no unresolved points of error.