NO. 07-06-0404-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



MAY 16, 2007


______________________________



DANIEL DOMINIQUE JAQUEZ, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 53,032-D; HON. DON EMERSON, PRESIDING


_______________________________



Memorandum Opinion


_______________________________




Before QUINN, CJ., and CAMPBELL and HANCOCK, JJ.

 Daniel Dominique Jaquez appeals his conviction for burglary of a habitation. In one
issue, he contends that the trial court erred in permitting the State to amend the indictment
on the day of trial. The amendment consisted of correcting the date of a prior conviction
pled for enhancement purposes. We affirm the judgment. 

 As previously mentioned, the State sought to amend the indictment to correct the
date of the prior conviction pled in the enhancement paragraph. Notice of its intent to do
so was sent to appellant's trial counsel, and the latter admitted to having received it ten
days before trial. Nonetheless, appellant objected when effort was made, on the day of
trial, to formally amend the charging instrument. Before us, he asserts that the effort failed
to comply with art. 28.10 of the Texas Code of Criminal Procedure for the provision does
not allow amendment on the day of trial. We overrule the issue.

 Authority also holds that while prior convictions used for enhancement purposes
must be pled in some form, they need not be pled in the indictment. Villescas v. State, 189
S.W.3d 290, 292-93 (Tex. Crim. App. 2006); Brooks v. State, 957 S.W.2d 30, 34 (Tex.
Crim. App. 1997); Johnson v. State, 214 S.W.2d 157, 158 (Tex. App.-Amarillo 2007, no
pet.). So too are we told not only that the deletion of surplusage from an indictment falls
outside the requirements of art. 28.10 but also that surplusage encompasses language
unessential to the validity of the indictment. Johnson v. State, 214 S.W.3d at 158. Since
enhancement paragraphs need not be pled in the indictment, it logically follows that they
are unessential to the validity of the instrument and comparable to surplusage for purposes
of art. 28.10. Id. As a result, we conclude that modifying the date in the enhancement
paragraph here does not implicate art. 28.10 and, therefore, the trial court did not violate
the terms of that provision. Id.

 Accordingly, we affirm the judgment.

 

 Brian Quinn 

 Chief Justice 

Do not publish. 



 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-00044-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



MAY
19, 2011

 



 

MATTHEW RAY WATSON, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 108TH DISTRICT COURT OF POTTER
COUNTY;

 

NO. 50,524-E; HONORABLE DOUGLAS WOODBURN, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

 

            Appellant,
Matthew Ray Watson, appeals his conviction for reckless injury to a child, and
sentence of twenty years incarceration and $10,000 fine.  We will modify a portion of the judgment and
affirm the judgment as modified.

Background

            Appellant
and his girlfriend, Amy Buie, were the parents of Averial.  Averial was born on June 21, 2004.  Because Amy had a job, appellant became the
primary caregiver for Averial and her half-sister, Jordyn.  Amy felt
that appellant was a good caregiver to the children based on her observation
that appellant never lost his temper with the children, even though Averial was a fussy baby. 
Amy had taken Averial to routine pediatric
check-ups which assessed Averial to be a healthy
baby.

            On
August 5, 2004, Amy went to work around 3:30 p.m.  Appellant took the children to a birthday
party at his brothers house.  Averial suffered no trauma and was not running a fever
while at the party.  However, it appeared
that Averial may have had an upset stomach.  Appellant left the party and picked Amy up
from work around 10:45 p.m.  

            Sometime
around midnight, Averial woke up and began
crying.  Amy got up to check on the
baby.  Amy checked the babys diaper and
prepared a bottle.  Averial
ate a little and then fell back to sleep. 
A little later, Averial again awoke
crying.  Amy comforted Averial until Averial again fell
asleep.  A few minutes later, Averial began crying again. 
This time, Amy asked appellant to go check on Averial.

            Appellant
got up while Amy remained in bed listening. 
Amy heard the microwave and assumed that appellant was preparing a
bottle for Averial. 
Amy then heard appellant slide the closet door in Averials
room open.  She then heard a thump that
she thought sounded like the diaper box in the closet being dropped on the
floor.  However, Amy also noted that Averials cry changed after the thump.  Soon thereafter, Averial
stopped crying, which Amy thought was due to appellant feeding the baby.  

            A
few minutes after Averial stopped crying, appellant
yelled to Amy that there was something wrong with the baby.  Amy leapt out of bed and met appellant
holding Averial. 
Averial was having serious trouble breathing
and was making a hiccupping breath. 
Appellant was hysterical and asking Amy what was wrong with the
baby.  Amy ran to put on her clothes to
take Averial to the hospital and, when she returned
to Averial, the baby had stopped breathing and was
beginning to turn blue.  Amy attempted to
perform CPR and give Averial mouth-to-mouth.  Amy noticed a pink frothy substance coming
out of Averials nose and mouth and heard Averial gurgling. 
Amy asked appellant to call 911, but appellant said that he could
not.  Amy got Averial
into the car.  She asked appellant to
drive them to the hospital so that she could continue administering CPR, but
appellant refused.  Consequently, Amy
drove Averial to the hospital and, because appellant
would not drive and did not go to the hospital, Averial
was deprived of oxygen for over five minutes.

            Upon
arriving at the hospital, hospital staff took Averial
away from Amy.  While Averial
was being treated, Amy spoke to appellant on the phone a few times.  Appellant seemed focused on wanting to know
whether the staff thought that he had done something to the baby.  

            Averial was unconscious and was placed on a
ventilator.  The examination of Averial indicated that something was wrong with her central
nervous system with increased intracranial pressure.  While there were no visible marks on Averial, x-rays established that Averial
had suffered several broken ribs and that she had a small skull fracture.  The broken ribs were noted to include both
new and old breaks.  Doctors eventually
approached Amy and noted that Averial appeared to
have been the victim of abuse.  After
eleven days in the hospital, Amy had to make the decision to take Averial, who was brain dead, off of the respirator.  

            As
a result of subsequent investigation, appellant was indicted for the offense of
capital murder.  After seven days of
trial, the jury was charged with determining whether appellant was guilty of
capital murder, manslaughter, intentionally or knowingly causing a child serious
bodily injury, or recklessly causing a child serious bodily injury.  The jury found appellant guilty of the
offense of injury to a child by recklessly causing serious bodily injury.  After punishment evidence was presented, the
jury assessed appellants punishment at 20 years
incarceration in the Institutional Division of the Texas Department of Criminal
Justice, and a $10,000 fine.  When the
trial court entered the written judgment, it noted that an assessment of court
costs was based on an attachment, which appears to be a subsequently prepared
Bill of Costs.  This bill of costs
assesses $56,996.04 for court-appointed attorneys fees, and $10,599.30 as a
Witness Fee.  From this judgment,
appellant timely filed notice of appeal. 

            By
four issues, appellant challenges the judgment of conviction.  In the order in which these issues will be
addressed, appellant contends that the evidence was insufficient to support his
conviction for injury to a child by recklessly causing serious bodily injury.  Further, appellant contends that the trial
court erred in assessing attorneys fees and a witness fee against
appellant.  The State responds that the
evidence was sufficient to support the conviction, but concedes that the
assessment of attorneys fees and the witness fee was erroneous.

 

 

 

Sufficiency of the Evidence

            By
his fourth issue, appellant contends that the evidence was legally insufficient
to support a conviction for the lesser-included offense of injury to a child by
recklessly causing serious bodily injury.

In assessing the sufficiency of the
evidence, we review all the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). 
When reviewing all of the evidence under the Jackson standard of
review, the ultimate question is whether the jurys finding of guilt was a
rational finding.  See Brooks
v. State, 323 S.W.3d 893, 906-07 (Tex.Crim.App.
2010) (discussing Judge Cochrans dissent in Watson v. State, 204 S.W.3d
404, 448-50 (Tex.Crim.App. 2006), as outlining the
proper application of a single evidentiary standard of review).  The jury is the exclusive judge of the
credibility of the witnesses and of the weight to be given their
testimony.  Barnes
v. State, 876 S.W.2d 316, 321 (Tex.Crim.App.
1994).  Likewise, it is within the
exclusive province of the jury to reconcile conflicts in the evidence.  See Tex.
Code Crim. Proc. Ann. art.
38.04 (West 1979); Losada
v. State, 721 S.W.2d 305, 309 (Tex.Crim.App.
1986).

For the evidence in this case to be
sufficient, it must allow a reasonable jury to determine that appellant
recklessly[1]
caused serious bodily injury to a child[2]
beyond a reasonable doubt.  See Tex. Penal Code Ann. § 22.04(a)(1); Jackson, 443 U.S. at 319; Ross, 133
S.W.3d at 620.  A person acts recklessly
when he is aware of, but consciously disregards, a substantial and
unjustifiable risk that the result will occur. 
Tex. Penal Code
Ann. § 6.03 (West 2003).  

Appellants contention is premised on
the fact that Amy was the only witness of the events of August 6, 2004.  Further, appellant points to the fact that
Amy could not see appellants interaction with Averial
and, therefore, all of the evidence implicating
appellant was circumstantial.

However, proof of a defendants
culpable mental state is almost invariably proven by circumstantial
evidence.  Morales v. State, 828
S.W.2d 261, 263 (Tex.App.Amarillo 1992), affd, 853 S.W.2d 583 (Tex.Crim.App.
1993).  In the absence of direct
evidence, the jury is tasked with reviewing all of the evidence to determine
from the circumstantial evidence, such as the acts, words, and conduct of the
defendant, whether the defendant possessed the requisite mental state.  See id.

            In
the present case, the jury heard evidence that Averial
was generally healthy prior to August 6, 2004. 
After Amy had twice checked on Averial, appellant
got up to check on Averial due to her crying.  When appellant got up to check on Averial, Amy heard a thump and, soon thereafter, Averial stopped crying. 
Following appellants alert to Amy that there was something wrong with
the baby, appellant refused to call 911 or to drive Amy and Averial
to the hospital.  The jury heard evidence
that appellant seemed much more concerned about what the doctors thought caused
Averials condition than he was about Averials condition. 
Also, the jury heard evidence that Averial
died from blunt force trauma that caused intracranial hemorrhage, and that Averial had both old and new rib fractures.  Clearly, we believe that it is a reasonable
inference that Averial suffered the blunt force
trauma that resulted in her death when Amy heard the thump.  At the time that Amy heard the thump,
appellant was the only person that had access to Averial.  Viewing all the evidence in the light most
favorable to the verdict, we conclude that a rational jury could have found that
appellant recklessly caused serious bodily injury to Averial
beyond a reasonable doubt.  See Jackson,
443 U.S. at 319.

            We
overrule appellants fourth issue.

Assessment of Attorneys Fees

            By
his first two issues, appellant challenges the trial courts assessment of
attorneys fees as court costs.  The
State concedes that the assessment of attorneys fees without a finding that
appellant possessed the ability to pay was in error.  

            Article
26.05(g) of the Texas Code of Criminal Procedure provides, [i]f the court determines that a defendant has financial
resources that enable him to offset in part or in whole the costs of the legal
services provided, . . . the court shall order the defendant to pay during the
pendency of the charges or, if convicted, as court costs the amount that it
finds the defendant is able to pay.  Tex. Code Crim. Proc. Ann. art. 26.05(g)
(West Supp. 2010).  The key
factors in determining the propriety of ordering reimbursement of fees are the
defendants financial resources and ability to pay.  Mayer v. State, 309
S.W.3d 552, 556 (Tex.Crim.App. 2010).  Without evidence to demonstrate appellants
financial resources to offset the costs of the legal services, the trial court
erred in ordering reimbursement of appointed attorney fees.  Mayer v. State, 274 S.W.3d 898, 901 (Tex.App.Amarillo 2008), affd,
309 S.W.3d at 558.  

            Here,
the record includes no evidence that appellant had the ability to pay
attorneys fees at the time that the trial court assessed them.  As such, we conclude that the evidence
supporting this portion of the judgment is legally insufficient and will modify
the judgment to remove the assessment of $56,996.04 for attorneys fees.  See id. at
902.

            We
sustain appellants first and second issues.

Assessment of Witness Fees

By his third issue, appellant
challenges the assessment of a witness fee as court costs.  The State again concedes that the assessment
of a witness fee was error, but relies on current case law not supporting the
inclusion of witness fees as costs of court rather than on the lack of a
finding of appellants ability to pay the fee.

            Unlike
legislatively mandated fees that are statutorily required to be assessed
against a convicted defendant, see Tex.
Govt Code Ann. §§ 102.021, 102.041 (West
Supp. 2010); Armstrong v. State, 320 S.W.3d 479, 481 (Tex.App.Amarillo 2010, pet. granted), this Court has held
that there is no statutory authorization for the assessment of non-resident
witness fees as costs of court in criminal cases.  See Sikalasinh
v. State, 321 S.W.3d 792, 798 (Tex.App.Amarillo
2010, no pet.) (holding that article 102.002 of the
Texas Code of Criminal Procedure does not authorize the assessment of witness
fees paid pursuant to article 35.27 as costs of court).  As such, we conclude that the trial court
erred in assessing a witness fee as a cost of court, and will modify the
judgment to remove the assessment of $10,599.30 as a witness fee.

            We
sustain appellants third issue.

Conclusion

            For
the foregoing reasons, we modify the judgment of the trial court to delete the
assessments of $56,996.04 for attorneys fees and $10,599.30 as a witness
fee.  As modified, we affirm the judgment
of the trial court. 

 

 

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice








Do
not publish. 

 











[1] When the conduct
causing serious bodily injury to a child is engaged in recklessly, the offense
is a second degree felony.  Tex. Penal Code Ann. § 22.04(e) (West Supp. 2010).

 





[2] For this offense, a
child means a person 14 years of age or younger.  Tex. Penal Code Ann.
§ 22.04(c)(1).