

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-167-CR

CAMERON RAY BYRD                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

Appellant Cameron Ray Byrd entered open pleas of guilty to the offenses of driving while intoxicated subsequent offense, evading arrest or detention with a motor vehicle, and unauthorized use of a motor vehicle. Each count was enhanced to a second degree felony by prior convictions, to which Byrd pled true, and by an affirmative finding of the use of a deadly weapon, an automobile. The jury assessed punishment at the maximum of twenty years'

confinement on each count, and the trial court sentenced Byrd accordingly, with the sentences to run concurrently. Byrd complains on appeal that he was denied due process because the State did not provide him with sufficient, timely, and proper written notice of its intent to seek a deadly weapon finding. We will affirm.

## II. BACKGROUND

On August 19, 2006, Byrd stole a 1995 Mercury Cougar from the parking lot of a Sonic drive-in restaurant in Hood County, Texas. A witness saw Byrd recklessly drive away in the car and immediately called 911. Byrd fled from the responding police officers, resulting in a police chase through multiple cities and at speeds up to 115 miles per hour. Law enforcement officers laid spike strips in two separate locations in an attempt to end the dangerous car chase. Byrd ran over both spike strips but continued driving for approximately three more miles before stopping the car. Byrd stopped the car in a mobile home park and fled on foot, hiding from the officers underneath a mobile home. The officers found Byrd, pulled him out from underneath the mobile home, and made the arrest. No one was injured during the chase.

The indictment included enhancement paragraphs based on Byrd's prior convictions, but it did not allege that Byrd used a deadly weapon during the commission of the charged offenses. On February 22, 2007, the State faxed

2

to Byrd's defense counsel a notice of intent to seek a deadly weapon finding. On March 7, 2007, the State faxed a second letter to counsel, reminding him of the notice of intent letter faxed on February 22. The State did not file either letter with the trial court before trial commenced, nor did it specify in either letter the exact nature of the alleged deadly weapon.[1]

On March 19, 2007, during voir dire, the State addressed three times the issue concerning the use of a car as a deadly weapon. After the jury was sworn in, the trial court admonished Byrd on his guilty pleas and specifically told Byrd that the State was seeking a deadly weapon finding. The trial court asked Byrd if he understood that the State was seeking a deadly weapon finding and the resulting ramifications, if proven. Byrd responded that he understood the admonishments and, with that knowledge, stated that he still desired to plead guilty. The trial on punishment then commenced.

At the conclusion of the first day of the punishment trial, counsel objected to any evidence regarding a deadly weapon finding because, at that

---

[1] The first letter faxed to counsel on February 22, 2007, states in part: "This letter serves as notice to you that the State intends to seek a deadly weapon finding in the above-mentioned cause against your client." The second letter faxed to counsel on March 7, 2007, states in part: "The State will make no offer on the above-mentioned case. Following please find the letter dated February 22, 2007, wherein the State pulled the previous offer and gave deadly weapon notice."

3

time, the State had not filed with the trial court a notice of intent to seek a deadly weapon finding. Counsel also had caselaw prepared to submit to the trial court on the notice issue. The State responded by asserting that it had faxed counsel a notice of intent and sent a subsequent fax to counsel, reminding him of the initial notice. The trial court overruled counsel's objection but agreed to look at counsel's cases and revisit the issue if necessary.

At the beginning of the second day of the punishment trial, the State filed with the court a notice of intent to seek a deadly weapon finding, specifically stating that the deadly weapon was the 1995 Mercury Cougar. The State attached both letters that were faxed to counsel as exhibits to the notice of intent. The trial court stated that it had read the cases provided by counsel on the previous day and had also conducted additional research on the issue. Based on its research, the trial court concluded that the State had given notice to Byrd in "some form," referencing the two faxed letters to counsel. Counsel made no objection at that time to the filing of the notice of intent. Counsel did object, however, at the close of the evidence, stating that the State had made an untimely filing and that the faxed letters were not specific as to the nature of the deadly weapon. At no point did counsel request a continuance in response to the deadly weapon allegation.

4

The trial court attached to the jury charge the deadly weapon special issue, and the jury found that Byrd had used the vehicle as a deadly weapon during the commission of the charged offenses. The jury assessed punishment at twenty years' confinement on each count in the indictment, and the trial court sentenced Byrd accordingly.

### III. NOTICE OF INTENT TO SEEK A DEADLY WEAPON FINDING

Byrd argues that he was deprived of his constitutional right to due process and due course of law under the federal and Texas constitutions because the State filed an untimely, improper, and insufficient notice of intent to seek a deadly weapon finding. *See* U.S. CONST amends. V, XIV; TEX. CONST. art. I, §§ 13, 19.

A defendant is entitled to notice that the State will seek an affirmative finding that a deadly weapon was used during the commission of the charged crime. *Brooks v. State*, 847 S.W.2d 247, 248 (Tex. Crim. App. 1993); *Ex parte Patterson*, 740 S.W.2d 766, 775 (Tex. Crim. App. 1987), *overruled on other grounds*, *Ex parte Beck*, 769 S.W.2d 525, 528 (Tex. Crim. App. 1989). This notice is firmly rooted in fundamental precepts of due process and due course of law. *Patterson*, 740 S.W.2d at 774 n.7. A defendant has the right to be informed, at a bare minimum, that a particular proceeding, over and above the determination of guilt and sentencing, will occur, which may operate to

5

further diminish the accused's liberty interest. *Id*. The court of criminal appeals has never held what constitutes timely notice in this context. We note, however, that the Court has recently held that the right to notice of the State's intent to use prior convictions as enhancements, similar to notice given for deadly weapon allegations, is constitutionally based and that due process does not require that notice of prior convictions be given before the trial on guilt begins. *See Villescas v. State*, 189 S.W.3d 290, 293–294 (Tex. Crim. App. 2006) (stating that requiring notice to come before the trial on guilt ignores the possibility that the trial court could take measures to cure the notice problem by granting a continuance).

Regarding the type of notice required to be given, the court of criminal appeals has held that a count in the indictment containing a deadly weapon allegation sufficed to give a defendant notice of the State's intent to seek an affirmative finding of the use of a deadly weapon. *Beck*, 769 S.W.2d at 526–27. Shortly after *Beck*, the Court reaffirmed its decision in *Patterson* and held that the State must plead its notice of intent to seek an affirmative finding of the use of a deadly weapon. *See Luken v. State*, 780 S.W.2d 264, 266–67 (Tex. Crim. App. 1989). The Court then held that notice need not be contained in the indictment; rather, a defendant is simply entitled to written notice in some form that the use of a deadly weapon will be a fact issue at trial. *Brooks*,

6

847 S.W.3d at 248; *see also Ex parte Minott*, 972 S.W.2d 760, 761 (Tex. Crim. App. 1998) (citing *Brooks* and concluding that although he had not received written notice of *any kind* and the indictment did not contain reference to a deadly weapon, the defendant had received actual notice when he pled guilty as part of a plea agreement that included an affirmative finding of a deadly weapon); *Sanders v. State*, 963 S.W.2d 184, 188 (Tex. App.—Corpus Christi 1998, pet. ref'd) ("[Notice] must be in writing and reasonably calculated to inform the defendant [that] the use of a 'deadly weapon will be a fact issue at the time of prosecution.'"). In any event, the adequacy of constitutional notice of the State's intent to seek a deadly weapon finding depends largely on the specific facts of a given case. *Hocutt v. State*, 927 S.W.2d 201, 203 (Tex. App.—Fort Worth 1996, writ ref'd).

In this case, it is undisputed that the State faxed and Byrd's counsel received two letters regarding the State's notice of intent to seek a deadly weapon finding, the first of which the State sent approximately one month in advance of trial. Also, on the first day of trial, counsel had caselaw prepared to submit to the trial court specifically addressing the issue of the requirement that the notice of intent be filed with the trial court. Further, Byrd twice admitted to the trial court that he understood the State was alleging that he had committed the offenses with the use of a deadly weapon. Although Byrd

7

argues that, based on the advice of his defense counsel, he "merely agreed" with the trial court that the State intended to prove that he committed the offenses with a deadly weapon because he believed that the State had failed to properly file the notice, the record does not support this claim.

This is not a case in which the defendant learned of the State's intent to seek a deadly weapon "only after all the evidence was in, both sides had closed, and the charge was read to the jury." *See Patterson*, 740 S.W.2d at 777. Defendants, like that in *Patterson*, are in effect "blindsided" because they have "no prior indication that the nature of the weapon used was to be a particular issue in the case." *See Whately v. State*, 946 S.W.2d 73, 75–76 (Tex. Crim. App. 1997); *Patterson*, 740 S.W.2d at 777. But here, we cannot say that Byrd was blindsided by the deadly weapon special issue in this case because he had more than an "indication" of the State's intent; he had written notice that the State intended to seek a deadly weapon finding approximately one month before trial. *See Brooks*, 847 S.W.3d at 248. And to satisfy the pleading requirement, the State filed the notice with the trial court to support the special issue submitted to the jury. *See Luken*, 780 S.W.2d at 266–67; *Patterson*, 740 S.W.2d at 766–67.

Byrd's due process claim is also weakened by his failure to ask for a continuance to relieve any surprise or prejudice. *See Whatley*, 946 S.W.2d at

8

76–77; *Nolasco v. State*, 970 S.W.2d 194, 197 (Tex. App.—Dallas 1998, no pet.). Indeed, we find little merit in this due process claim when Byrd, confronted with the issue of the deadly weapon allegation during the trial court's admonishments, could have, but did not, request a continuance. Instead, he admitted that he understood the State was seeking a deadly weapon finding because he knew that the notice, which he received twenty-seven days earlier and on which he had prepared defense, was not filed. *See Whatley*, 946 S.W.2d at 76–77; *Nolasco*, 970 S.W.2d at 197.

In sum, under the facts of this case, the State's notice faxed to Byrd on February 22, 2007, gave Byrd adequate written notice of its intent to seek a deadly weapon finding. And, Byrd's failure to ask for a continuance defeats any due process claim he might have had. *See Nolasco*, 970 S.W.2d at 197. Given these factual circumstances, the timing of the formal filing on the second day of trial did not violate Byrd's right to due process.[2]

---

[2] We acknowledge the holding in a similar case, *Randle v. State*, in which the court of appeals held that a notice letter prepared by the State two days prior to trial and filed on the day of trial was insufficient notice to the defendant of the State's intent to seek a deadly weapon finding. *See* No. 01-91-00793-CR, 1994 WL 168267 at *2 (Tex. App.—Houston [1st Dist] May 5, 1994, writ ref'd) (not designated for publication). Relying on the requirement stated in *Luken* that the State must plead the notice, the court stated that "[a]ssuming the May 6 letter was otherwise sufficient as a pleading, it was not filed before the date trial commenced." *Id*. (citing article 28.10(a) of the Texas Code of Criminal Procedure, providing that, after notice and upon request, a

Byrd also claims that his due process rights were violated because the State failed to adequately apprise him of the exact nature of the deadly weapon allegation. Citing *Hocutt*, a prior decision from this court, Byrd contends that because the State did not specify the nature of the deadly weapon in the faxed notices, he reasonably believed that any enhanced punishment he might have received was a result only of his prior convictions. *See* 927 S.W.2d at 203.

In *Hocutt*, the defendant, charged with driving while intoxicated, caused an accident with another vehicle, resulting in minor injuries to the passengers of both vehicles. *See id*. at 202. The State faxed and filed notice letters three

_____

defendant is allowed not less than ten days to respond to an amended indictment or information).

We first note that, unlike *Randle,* in which the State "prepared" a letter two days prior to trial that might not have even reached the defendant by the date of trial (an issue not addressed by the court), the State, in this case, sent written notice via facsimile twenty-seven days before the start of trial. *See id*. And, it is also undisputed that Byrd's counsel received both notice letters. Presumably, even if the State, in *Randl*e, had actually filed the letter with the trial court two days before trial, notice still might not have been timely. *See Hocutt*, 927 S.W.2d at 202, 204 (holding that notice of intent to seek a deadly weapon finding filed three days before trial was untimely). Secondly, we note that notice of intent to seek a deadly weapon finding is not governed by article 28.10. *See* TEX. CODE CRIM. PROC. ANN. art. 28.10 (Vernon 2006). Notice of a deadly weapon allegation, similar to notice of enhancements based on prior convictions, which must also be pled, is based in the constitution, not the statutes. *See Villescas*, 189 S.W.3d at 294; *see also Patterson*, 740 S.W.2d at 774 n.7 ("[Notice of the State's intent to seek a deadly weapon finding] is that firmly rooted in fundamental precepts of due process and due course of law.").

days before trial but did not specify the nature of the deadly weapon, the automobile. *Id*. at 203. We held that the State's notice was inadequate because the State gave written notice only three days before trial, there were no serious bodily injuries that resulted from the accident, a car is not a deadly weapon per se, and the notice was not specific as to the nature of the deadly weapon. *See id*. at 204. Like in *Hocutt*, there were no injuries resulting from Byrd's use of the vehicle, and the faxed notices did not specify the type of deadly weapon involved. However, unlike in *Hocutt*, Byrd never requested a continuance. *See id*. at 203. As held in *Whately*, when the defendant is not blindsided by the deadly weapon allegation and the defendant fails to request a continuance, there is no fundamental unfairness by failing to specify the type of weapon involved. 946 S.W.2d at 75–76. Thus, because Byrd failed to request a continuance and was not surprised or blindsided by the notice of intent, we hold that Byrd's claim that the he was prejudiced by the lack of specificity in the notice must fail. *See id*.

We do not hold as a general rule that notice formally filed by the State on the second day of trial or lacking specificity as to the type of weapon used is constitutionally adequate. Rather, we hold that Byrd's due process rights were not violated when he received written notice twenty-seven days before trial, which the State eventually filed with the trial court; admitted that he

11

understood that the State was seeking a deadly weapon finding; had a prepared defense ready on the first day of trial concerning the issue of filing the notice as a pleading; and failed to ask for a continuance at any time before or during the trial.  Accordingly, we overrule Byrd's sole issue.[3]

## IV. CONCLUSION

Having overruled Byrd's sole issue on appeal, we affirm the trial court's judgment.

DIXON W. HOLMAN
JUSTICE

PANEL: CAYCE, C.J.; HOLMAN and WALKER, JJ.

CAYCE, C.J. and WALKER, J. concur without opinion.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  August 29, 2008

---

[3] We note that in *Throneberry v. State* we came to a different conclusion when the State gave written notice to the defendant through an informal letter over one year in advance of trial that it intended to use prior convictions to enhance the defendant's punishment.  109 S.W.3d 52, 59–60 (Tex. App.—Fort Worth 2003, no pet.).  However, unlike here, the State in *Throneberry* never filed the notice with the trial court as a pleading but instead admitted the letter into evidence at the end of the guilt-innocence phase.  *See id.* at 59.

12