NO. 07-07-0259-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 29, 2008

_____


TIMOTHY SHAWN MAJORS, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 53,992-E; HON. ABE LOPEZ, PRESIDING

_____

Before CAMPBELL, HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**


Appellant, Timothy Shawn Majors, was convicted, after a jury trial, of the offense of

unlawful possession of a firearm by a felon, enhanced by two prior felony convictions. The

same jury found the allegations of both prior felony convictions to be true and sentenced

appellant to 78 years in the Institutional Division of the Texas Department of Criminal

Justice. Appellant contends through three issues that the judgment of the trial court should

either be reversed and remanded or a judgment of acquittal should be entered. Disagreeing, we will affirm the trial court's judgment.

## Factual and Procedural Background

On July 1, 2006, appellant and Alicia Choudry were at an after hours club in Amarillo, Texas. Before the incident in question, appellant and Choudry had previously had a relationship that had terminated. Appellant and Choudry had a disagreement inside the club and Choudry went outside. Appellant came out and another exchange of words occurred. Choudry, who had been sitting on a car, stood up and stepped toward appellant who then slapped her. Choudry told appellant that she was going to call the police. At that time, appellant went to a vehicle, identified as belonging to his girlfriend, and retrieved, what was described by Choudry, as a gun. According to Choudry, appellant was waving the gun around daring Choudry to call the police. Choudry left the scene after appellant began waving the gun around.

Choudry went to the police and gave a statement on July 10, 2006. In that statement, Choudry recounted the events of July 1, 2006, and identified the gun appellant was waving as a black and white semi-automatic, similar to the gun possessed by the officer who took her statement. The day after Choudry gave her statement, she returned to the police with Lillian Gentry. Gentry executed a statement that corroborated the facts given in Choudry's statement. Subsequently, both Choudry and Gentry executed other statements recanting their original statements. Prior to trial, another witness, Stacy Jones, came forward claiming to have been present at the scene and further stating that appellant

2

did not ever have a gun on the night in question. However, Jones later testified that she was not present at the club on the night of the incident and that appellant had asked her to give a statement saying she was present.

Prior to trial, appellant filed a motion in limine requesting that the State be required to approach the bench prior to any testimony about an alleged incident of retaliation toward Choudry. The court granted the motion. Additionally, appellant had filed a pre-trial motion for notice of the State's intent to use evidence of extraneous offenses. In response, the State filed a notice of intent to use the retaliation evidence. However, the State's notice was filed the day voir dire began. During Choudry's testimony, appellant vigorously cross-examined her and assailed her credibility through the production of two other statements signed by her that recanted most of her original statement. Because appellant was also able to show that he was Choudry's immediate supervisor at work, appellant further attacked Choudry's credibility and questioned her about appellant having reprimanded her at work. As a result of the cross-examination of Choudry, the State approached the bench and requested permission to question Choudry about the retaliation incident. After hearing the evidence outside the presence of the jury, the trial court allowed the testimony. This testimony showed that, after the charges had been filed against appellant, Choudry was at the club where the incident occurred and met up with appellant and his then girlfriend. Choudry testified that appellant had his girlfriend fight Choudry and, as a result, Choudry was beaten.

After hearing all of the evidence, the jury convicted appellant of the charge of felon in possession of a firearm. Prior to commencing the punishment phase of the trial,

3

appellant filed a motion to quash the second enhancement paragraph. The State agreed that it could not use that offense as an enhancement and requested permission to use another felony as the second enhancement. Appellant objected claiming that the State was attempting to amend the indictment. After hearing argument, the trial court granted a one day recess to appellant. The next day, the trial court ruled that the State could use the other felony conviction as the second enhancement, to which appellant pled "Not True." The jury found that the enhancements were true and assessed a sentence of 78 years confinement. Appellant subsequently gave notice of appeal.

Through three issues, appellant contends that: 1) the evidence is legally and factually insufficient to sustain the judgment of conviction, 2) the trial court erred in admitting the evidence of retaliation in violation of Rule 404(b) of the Texas Rules of Evidence, and 3) the trial court erred in permitting the State to amend the second enhancement paragraph of the indictment after the trial had commenced. We disagree with appellant and will affirm the judgment of the trial court.

## Sufficiency of the Evidence

Appellant contends that the evidence was not legally nor factually sufficient to sustain the conviction. When both legal and factual sufficiency are attacked, we must first address the issue of legal sufficiency. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). If the evidence is legally sufficient, we then review the factual sufficiency challenge. See id. In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational

4

trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

To convict someone of the offense of felon in possession of a firearm, the State must prove that 1) appellant, 2) intentionally or knowingly, 3) possessed a firearm, 4) away from the premises where appellant resided, and 5) that appellant had been previously

5

convicted of a felony offense. See TEX. PENAL CODE ANN. § 46.04(a)(2) (Vernon 2004).[1]

A review of appellant's brief indicates that appellant is either claiming the evidence is insufficient as to the possession element of the offense or that the evidence is insufficient to prove that what appellant had in his possession was a firearm. This observation is made because appellant cites the court to several cases that deal with proof of possession where the defendant's possession of the contraband item was not exclusive or more than one person had access to the contraband. See Coleman v. State, 188 S.W.3d 708, 720-21 (Tex.App.–Tyler 2005, pet. ref'd). However, the record is clear about one aspect of the case, there is no evidence that the item possessed by appellant was in the care, custody, or control of anyone else. For this reason, those cases cited by appellant are not relevant to our determination of the case. The sole issue at trial and on appeal is, did appellant have a firearm in his hands on the occasion in question. Appellant, through cross-examination of the witnesses presented by the State, attempted to prove that the primary witness, Choudry, was mad at appellant and had invented the allegation that appellant had a firearm in his hands at the time of the incident in question. Further, through cross-examination of both Choudry and Gentry, appellant attempted to show the jury that each had lied on their original statements and had subsequently executed additional statements recanting those portions of the original statement that alleged appellant had a handgun in his possession on the night in question. Further, appellant's contention is that the evidence

---

[1]Further reference to the Texas Penal Code will be by "§ ___."

regarding the item in his hand on the night in question is not legally or factually sufficient to meet the definition of a firearm under the Texas Penal Code. See § 46.01(3).[2]

A review of the evidence reveals that both Choudry and Gentry admitted signing more than one statement. However, Choudry testified that the first statement was a truthful account of the events on the evening in question. Although she was vigorously cross-examined, she maintained that appellant did have in his possession a gun. She described the gun as being like the one the officer who took her statement had, only smaller. The officer who took Choudry's original statement testified that, at the time of the statement, he carried a black Sig Sauer model 220 that was black with a silver slide. While admitting she had made subsequent statements that seemed to contradict both her testimony in court and the original statement, Choudry alleged she signed the subsequent statement because of fear of appellant. After the cross-examination of Choudry, the State presented evidence of an alleged attempt at retaliation directed toward Choudry by appellant. This testimony was that appellant had directed his then current girlfriend to challenge Choudry to a fight. The testimony was that appellant was present when the fight occurred and was encouraging his girlfriend throughout the fight. As a result of the fight, Choudry was beaten.

Gentry originally gave a statement that said that appellant had in his possession a gun that looked like the one the officer who took her statement had on his person. The

---

[2]The definition of firearm, as applicable to this case is: (3) "Firearm" means any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use. § 46.01(3).

same officer took both statements. However, Gentry gave subsequent statements that claimed she never saw a gun and that Choudry had told her what to say when she gave her first statement. Gentry's testimony was that her subsequent statements were the true facts that occurred and that she never saw appellant with a gun.

The State was able to produce testimony that appellant was known to carry a gun. This testimony came from Choudry and from another former girlfriend of appellant, Stacy Jones. Jones also testified that, during the time she was appellant's girlfriend, she executed a statement claiming to have been present at the scene on the evening in question and that appellant never had a gun. She testified that those facts were not true and she had not been at the scene on the evening in question, but that she prepared the statement at appellant's specific insistence.

Finally, appellant presented testimony of Clint Haider, his employer, that appellant was the former supervisor of Choudry. Haider further testified that he had observed Choudry being insubordinate to appellant. As a result of this incident, Choudry was reprimanded and was going to be fired, however, she quit before she was terminated. According to appellant, this event was the catalyst for Choudry's attempt to have charges filed against him.

When conducting our legal sufficiency review, we must view the evidence in the light most favorable to the verdict. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. The jury had Choudry's in-court testimony and her original statement indicating that appellant had a gun. Viewing this evidence in the light most favorable to the verdict, there is

sufficient evidence that appellant had in his possession on the night in question a gun. Further, the testimony regarding the description of the gun was legally sufficient to prove it was a firearm. See Campbell v. State, 633 S.W.2d 592, 594 (Tex.App.–Amarillo 1982, pet. ref'd). Therefore, we cannot say that the jury acted irrationally in convicting appellant.

On the issue of the factual sufficiency of the evidence, the question comes down to witness credibility. Appellant clearly relies on the conflicting testimony to support his allegation of factual insufficiency. The credibility of witness testimony is a subject matter that the jury is uniquely qualified to determine. See Maestas v. State, 963 S.W.2d 151, 156 (Tex.App.–Corpus Christi 1998), aff'd, 987 S.W.2d 59 (Tex.Crim.App. 1999). Further, it is the jury's duty to resolve the conflicts in the testimony. Id. Finally, simply because the appellant presents a different version of the facts than the State does not render the State's case factually insufficient. Id. Giving the requisite deference to the jury's resolution of the conflicting evidence, we find that the jury was rationally justified in finding appellant guilty beyond a reasonable doubt.

Having found that the evidence is legally and factually sufficient, we overrule appellant's first issue.

Evidentiary Rulings

Appellant next complains about the trial court's ruling on two specific evidentiary matters. In the first instance, appellant complains that the trial court improperly allowed the State to offer evidence of a subsequent offense committed by appellant toward the primary witness, Choudry. In the second matter, appellant contends that the trial court

9

erred in overruling appellant's motion for mistrial when the witness for the State, during the guilt or innocence stage, commented that appellant had seven prior convictions. Although appellant places both fact patterns under one issue, the two issues are not related and will be treated separately.

Retaliation

At a pre-trial hearing, appellant filed a motion in limine requesting the trial court to order the State to approach the bench prior to eliciting testimony about a number of different matters. One of the issues covered by the motion in limine was any testimony about appellant's alleged retaliation against the primary witness, Choudry. The trial court ruled that he was granting the motion in limine unless somebody opens the door or something happens. Subsequently, after extremely vigorous cross-examination of Choudry that included testimony that she had recanted her original statement in a subsequent statement, the State requested permission to introduce the evidence about the retaliation charge against appellant. The State advised the court that the evidence was admissible to show why Choudry had executed the second statement. The trial court recessed for the evening after advising the parties he would rule the next morning. When the trial reconvened the next morning, the trial judge advised the parties he was going to permit the testimony. Appellant again objected on the grounds of lack of notice pursuant to Rule 404(b). However, appellant never claimed he was surprised by the evidence nor did he request a continuance.

Appellant's complaint is that the trial court improperly admitted the evidence of an extraneous offense before the jury; therefore, we will review the trial court's decision under an abuse of discretion standard. See McDonald v. State, 179 S.W.3d 571, 576 (Tex.Crim.App. 2005). An appellate court should affirm the trial court's ruling unless it finds that the decision is not within the zone of reasonable disagreement. See Green v. State, 934 S.W.2d 92, 102 (Tex.Crim.App. 1996). Stated another way, we will find an abuse of discretion only when the trial court acted without reference to any guiding rules or principles by acting arbitrarily or unreasonably. See Lyles v. State, 850 S.W.2d 497, 502 (Tex.Crim.App. 1993).

Rule 404(b) provides that evidence of other crimes, wrongs, or acts may be admissible during the State's case-in-chief, provided that the State has, upon request of the defendant, provided notice of intent to introduce such evidence. See TEX. R. EVID. 404(b). The record reflects that the State did not give notice of intent to use the evidence of the retaliation case against appellant until the morning jury selection began. The State did attempt to show that they had not become fully cognizant of the case until approximately two weeks prior to trial. Without ruling that the State's explanation of why the notice was late was sufficient, the trial court admitted the evidence. Based upon this record, we must conclude that the State failed to give proper notice of intent to use evidence of extraneous offenses, crimes, or acts and, therefore, the trial court committed error in admitting the evidence. See Hernandez v. State, 176 S.W.3d 821, 824 (Tex.Crim.App. 2005). This does not, however, mean that the error requires reversal of the trial court's judgment. Rather, we must continue the inquiry and determine whether the

11

error in admitting the evidence had a substantial and injurious effect in determining the jury's verdict. Id. We determine whether the admission had an affect on appellant's substantial rights by a Rule 44.2(b) harm analysis for non-constitutional errors. See TEX. R. APP. P. 44.2(b).[3] In construing this type of error, we note that Rule 404(b) is a notice provision aimed at preventing surprise, therefore, when conducting a Rule 44.2(b) analysis of this type of error, the issue of surprise to appellant is a valid consideration. Hernandez, 176 S.W.3d at 825. As stated above, appellant does not claim he was surprised by the evidence nor did he, at any time, request a continuance to prepare to defend against the extraneous evidence. Therefore, as in the Hernandez case, we cannot say that the admission of the evidence had an injurious effect on the jury's determination. Id. Accordingly, appellant's issue regarding the retaliation evidence is overruled.

Prior Convictions Testimony

During the examination of a Potter County Deputy Sheriff regarding fingerprints of appellant taken for comparison purposes to prove a prior conviction, the same one alleged for jurisdictional purposes in the indictment, the following colloquy occurred:

State: Can you tell the jury what your results yield?

---

[3]Rule of Appellate Procedure 44.2 provides:
(a) Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.
(b) Other Errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

12

Witness: Yes, sir. I received a total of seven prior felony convictionsfor an individual by the name of Timothy Shawn Majors.

Appellant immediately requested a conference at the bench where the trial court instructed the State to instruct the witness to limit his testimony to the conviction alleged for jurisdictional purposes. The trial court advised all parties that he was going to instruct the jury to disregard the last question and response. The jury was so instructed. Appellant moved for a mistrial, which the trial court denied.

Based on this factual background, appellant contends that the testimony of the seven prior convictions was a violation of Rule 404(b) and is, therefore, in error. Appellant misconstrues the trial court's ruling. The trial court did not admit the testimony about the seven prior convictions, rather, he instructed the jury to disregard the question and testimony. Additionally, the objection at trial never mentions Rule 404(b) nor can it be construed to include that objection. This leads to the inevitable conclusion that the issue on appeal does not comport with the objection at trial. Heidelberg v. State, 144 S.W.3d 535, 537 (Tex.Crim.App. 2004). In such a case, there is nothing preserved for appeal. Id. Accordingly, appellant's issue regarding the testimony of prior convictions is overruled.[4]

---

[4]Additionally, we note that the trial court's instruction to the jury was correct and given immediately. Appellant has presented no argument that would overcome the presumption that the jury followed the court's instructions to disregard the testimony and, therefore, error, if any, was cured. See Rojas v. State, 986 S.W.2d 241, 250 (Tex.Crim.App. 1998).

## Indictment

Appellant next contends that the trial court erred when it allowed the State to substitute another of appellant's felony convictions for the second enhancement paragraph, after the trial court granted appellant's motion to quash the second enhancement paragraph in the original indictment. The record reflects that, after the jury convicted appellant of unlawful possession of a firearm by a felon, appellant presented a motion to quash the second enhancement paragraph. The State agreed that the felony conviction listed in the second paragraph was, in fact, the same felony cited as the jurisdictional conviction for felon in possession of a firearm and, as such, it was not permissible to use that felony as a punishment enhancement. The trial court granted the motion to quash. The State then announced that it was going to substitute another of appellant's felony convictions for the second enhancement paragraph. The felony conviction to be substituted was one listed in the State's Notice of Intention to Use Prior Convictions for Enhancement. Appellant objected citing lack of notice and that the State was trying to untimely amend the indictment. The trial court then granted a continuance until the next morning to give appellant an opportunity to determine any legal reasons the State should not be allowed to substitute one of appellant's other felony convictions for the one listed in the second enhancement paragraph. The following morning, after again hearing from appellant and the State, the trial court allowed the substitution of a different final conviction in the second enhancement paragraph. At no time that morning, either before or after the trial court ruled, did appellant move for a continuance in order to more properly prepare a defense to the new enhancement conviction.

14

Appellant contends that the trial court overruled his motion for continuance, however, the record does not support this contention. As stated above, the record affirmatively shows that, after the trial court ruled that the State would be allowed to substitute a different final felony conviction, appellant did not request a continuance.

This becomes important because of the analysis of the Texas Court of Criminal Appeals in Villescas v. State. See Villescas v. State, 189 S.W.3d 290, 294 (Tex.Crim.App. 2006). In Villescas, the court was dealing with what kind of notice was the State required to give when using enhancements for punishment. Id. at 293. The intermediate appellate court had concluded that the notice issue was of non-constitutional origin and, therefore, when reviewing the action of the trial court, applied the non-constitutional harm analysis of Texas Rule of Appellate Procedure 44.2(b). Id. at 292. The court determined that notice was a due process issue and, therefore, of a constitutional nature. Id. at 294. Ultimately, the court in Villescas decided that notice given prior to the beginning of the punishment phase satisfies the federal constitutional due process requirement when the defendant has no defense to the enhancement allegation and has not requested a continuance. Id.

Applying the Villescas standard to the case before this court, we find that a one day continuance was granted after the State first requested permission to substitute a different felony conviction for the one alleged in the second enhancement paragraph. Further, the record reflects that the following morning, after the court announced his decision, appellant never indicated a need for a continuance. In fact, when asked if there was anything else before bringing in the jury, appellant responded, "No, Your Honor." The trial court then brought the jury in and asked if the State and defense were ready on punishment.

15

Appellant replied, without limitation, "Defense is ready, Judge." After the enhancement paragraphs were read, appellant pled "Not True" to both paragraphs. The evidence on the issue was presented. During the entire punishment hearing, appellant presented nothing that could be construed as a defense to the second enhancement paragraph. Accordingly, it appears to this court that appellant's position is exactly the same as that described in Villescas. Appellant did not request a continuance and had no defense to the second enhancement paragraph. Therefore, the notice given appellant before the beginning of the punishment hearing was sufficient. Appellant's third issue is overruled.

Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice


Do not publish.


16