

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00125-CR

_____

EDWARDO MORROW, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 38738-A

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

A trial to the bench led to the conviction of Edwardo Morrow for burglary of a habitation. Following a plea of "true" to the State's enhancement allegation, Morrow was sentenced by the trial court to twenty years' imprisonment. On appeal, he challenges the legal sufficiency of the evidence and complains the trial court erred because "there is no finding on the record that the enhancement was found to be true." We affirm the trial court's judgment, as modified.

## I. Legally Sufficient Evidence Supported Morrow's Conviction

### A. Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational fact-finder could have found the essential elements of burglary of a habitation beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the fact-finder "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

2

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *see also Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008). In order to establish Morrow committed burglary of a habitation as alleged in the indictment, the State was required to establish that Morrow, without effective consent of the owner, entered[1] a building or habitation with the intent to assault Lorie Hutzelman. TEX. PENAL CODE ANN. § 22.01 (Vernon Supp. 2010), § 30.02(a)(3) (Vernon 2003).

## B. The Testimony

On the evening of the incident giving rise to the charges, it appears that Morrow and Hutzelman were at Morrow's home, fighting one another. During a momentary lull in the physical activities, Morrow called Hutzelman's grandmother, Betty Ann Solis, on the telephone and told her, "You need to come pick up your granddaughter." Solis telephoned her daughter, Virginia Marie McWhorter (Hutzelman's mother), to deliver news of the volatile situation and then drove McWhorter and herself to Morrow's home to remove Hutzelman from the conflict. Solis testified,

> When I got there, my granddaughter opened the car . . . and got in. And as she got in, [Morrow] jumped in on top of her and was beating her in the head, just beating her, laying on top of her and beating her. . . . And my daughter and I both got out of the car, we went around to where my granddaughter had got in. And his feet was hanging out of the car, and we pulled him off of her with his feet. Well, when I

---

[1]"Enter" means to intrude any part of the body. TEX. PENAL CODE ANN. § 30.02(b)(1) (Vernon 2003).

3

> pulled him off, he knocked me to the ground. I got back up. . . . He got back
> down on [Hutzelman] and started beating on her again. . . . And we pulled him off
> again. . . . he run in the house and got a telephone. And he come back out and he
> beat [McWhorter] with it, beat her all over in the head, and she had to have stitches.
> I mean, he just kept beating her with that telephone.

After McWhorter and Hutzelman were able to scramble into the car, Solis drove away as Morrow "was running up by the car hitting my car with the telephone."

As Solis drove to the hospital, she called the police. McWhorter had suffered a wound to her head, which required four stitches, and Hutzelman suffered bruises to her eye, forehead, and arms. After McWhorter and Hutzelman received medical treatment, Solis took them to their apartment.[2]

Later that evening, McWhorter and Hutzelman heard a knock on the door. McWhorter, peeking out of the living room window, saw Morrow sitting in his vehicle, but did not recognize the person knocking; she refused to open the door. The unidentified person went to the car in which Morrow had been seen sitting. This was followed shortly thereafter by Morrow "pounding on the door trying to get in" while he was angrily "hollering" and "cussing."

Hutzelman, believing Morrow "would have killed me and my mom," called the police. Hutzelman and McWhorter testified they heard the living room window break during the time that Hutzelman was speaking on the telephone to the police dispatcher. Although neither saw the window breaking, and Hutzelman testified she did not see Morrow come through the window, McWhorter testified that "by the time 9-1-1 got to our house, he had one leg in the window."

---

[2]McWhorter and Hutzelman lived in apartment number 508 in the same apartment complex where Solis resided.

Solis claimed she received a telephone call from Hutzelman that "[Morrow] had been down there. He broke the window; he was climbing in their window. He said he was going to kill Lorie."

Officer Alejandro Castillo was the first policeman to respond. He observed Morrow "walking down the stairway that led up to [McWhorter's and Hutzelman's] apartment," and noticed that Morrow's right leg and shin area were bloody. Morrow claimed "he cut himself walking through some bushes," denied breaking the window, and stated he was knocking on the door of his daughter's apartment (which was adjacent to the apartment occupied by McWhorter and Hutzelman).

Morrow called his pastor, his uncle, and his nephew to testify in his defense. The pastor, Russell Martin, stated that Morrow had performed at a church function on the evening of the incident. The uncle, Arthur Lewis Murphy, claimed that he was on the porch of Morrow's home when Solis and McWhorter came to pick up Hutzelman and that he observed McWhorter jump on Morrow's back as Solis was hitting him. According to Murphy, Morrow hit McWhorter on the head only "to make [her] let him go." The nephew, Eli Rodney Fisher, testified that although he did not see McWhorter jump on Morrow, he did observe her as she grabbed him from behind, at which point Morrow swung his arm and hit her unintentionally. Fisher claimed that Solis did not touch Morrow. Fisher's account of the events at Morrow's home bore little resemblance to the account rendered by Murphy.

C.     Analysis

Morrow lodges two specific challenges with respect to legal sufficiency: that there was no entry into the habitation and that "there is insufficient evidence on any intent to commit an assault."

We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically-correct jury charge. Such a charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

Entry into a habitation may be established by inferences drawn from circumstantial evidence. *Martinez v. State*, 304 S.W.3d 642, 660 (Tex. App.—Amarillo 2010, pet. ref'd) (citing *Lopez v. State*, 884 S.W.2d 918, 921 (Tex. App.—Austin 1994, pet. ref'd)). The trial court was the sole judge of credibility of witnesses and weight assigned to their testimony. According to the testimony of McWhorter and Hutzelman, Morrow was "hollering," "cursing," and "pounding on the door trying to get in." Shortly thereafter, McWhorter and Hutzelman heard the window break. McWhorter testified that "by the time 9-1-1 got to our house, [Morrow] had one leg in the window." Officer Castillo found Morrow at the scene with a bloodied right leg. We conclude the trial court's determination that this evidence established that Morrow had entered was a reasonable and rational inference to draw.

Next, we examine Morrow's intent to commit assault. A person commits assault if he intentionally, knowingly, or recklessly threatens another with imminent bodily injury. TEX. PENAL CODE ANN. § 22.01(a)(1), (2). In determining whether Morrow attempted to threaten Hutzelman with imminent bodily injury, the crucial inquiry is whether he acted in such a manner as would, under the circumstances, portend an immediate threat of danger to a person of reasonable sensibility. *Olivas v. State*, 203 S.W.3d 341, 347 (Tex. Crim. App. 2006). Intent can be inferred from circumstantial evidence such as the person's acts, words, and conduct because "[o]ne's acts are generally reliable circumstantial evidence of one's intent[.]" *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009); *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The trial judge could consider events occurring before, during, and after the commission of the offense, and could "rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Guevara*, 152 S.W.3d at 49; *see McIntosh v. State*, 297 S.W.3d 536, 541 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (upholding legal sufficiency of conviction of burglary with intent to assault where defendant broke into window of victim's apartment, broke into bathroom where victim was hiding, and had assaulted victim in the past).[3]

---

[3]Morrow claims that because he "and Ms. Hutzelman had the type of relationship that continues despite conflicts," evidence of intent to assault was insufficient. In support of this, he cites to love letters sent by Hutzelman to Morrow and to telephone conversations between Morrow and Hutzelman, both things occurring after his incarceration. Hutzelman testified that although she still loved Morrow, she was afraid of him. The nature of the somewhat bizarre relationship between the two is not the pertinent issue; the proper inquiry, rather, is whether Morrow possessed the intention to assault Hutzelman at the time of the unlawful entry.

Here, the trial judge heard testimony that Morrow had previously that same day fought with Hutzelman (jumping on top of her and beating her), had assaulted her mother, and had shoved or pushed her grandmother.[4]  Hutzelman and McWhorter required medical attention for their injuries.  This was followed later that evening by Morrow appearing at the victims' residence, hollering, cussing, and angrily pounding on their door.  There was testimony that he entered the apartment by breaking in through the window; the intrusion of his leg through the window was sufficient to show entry.[5]  The court could find these actions would place a reasonable person in immediate fear of bodily harm.  Indeed, Hutzelman believed he was there to kill her and her mother, and Solis testified that McWhorter stated, "He said he was going to kill [Hutzelman]."

Because we find that a rational fact-finder could have found the essential elements of burglary of a habitation with intent to commit assault beyond a reasonable doubt, we find the evidence legally sufficient to support Morrow's conviction.  This point of error is overruled.

## II.    Morrow's Offense Was Punishable Within the First-Degree Range

Next, Morrow does not complain that the sentence is illegal.[6]  Rather, Morrow argues he could not be sentenced within the range of punishment for a first-degree felony[7] absent a finding

---

[4]The trial court was free to believe the testimony of Solis, McWhorter, and Hutzelman, while disbelieving Murphy's and Fisher's inconsistent testimony.  *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).  Further, even if the trial court found Martin's testimony that Morrow performed in church that night to be true, it may not have been inconsistent with a finding that Morrow had done all that the State's witnesses said he did; Morrow could have been performing while McWhorter and Hutzelman were seeking medical attention.
[5]TEX. PENAL CODE ANN. § 30.02(b)(1).

[6]Morrow acknowledges that the trial court's sentence of twenty years' imprisonment was authorized under conviction for burglary of a habitation, even without a finding of true to the enhancement allegation.

of "true" on the record as to the enhancement allegation, especially since the written judgment contains the notation "N/A" in the space for "Plea to 1st Enhancement Paragraph."

"As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion . . . ." TEX. R. APP. P. 33.1(a)(1). Because Morrow did not raise this issue to the trial court, he has failed to preserve the issue for our review. *Newby v. State*, 169 S.W.3d 413, 416 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Garner v. State*, 858 S.W.2d 656, 659 (Tex. App.—Fort Worth 1993, pet. ref'd) (finding appellant's assertion "that the trial court erred by not orally reading the two enhancement paragraphs or making an oral finding thereon during" bench trial on punishment was not preserved)).

Nevertheless, "while it is better practice for the trial court to make an oral pronouncement regarding its findings on punishment enhancement allegations, a trial court does not err when it overlooks making that pronouncement, especially when the issue of sentencing is submitted to the court rather than a jury." *Id.* When the trial court alone assesses a defendant's punishment, the court is not required to read the enhancement paragraphs or the findings to the defendant. *Garner*, 858 S.W.2d at 659 (citing *Reed v. State*, 500 S.W.2d 497, 499 (Tex. Crim. App. 1973)); *Seeker v. State*, 186 S.W.3d 36, 39 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Instead, the finding is implied. *See Almand v. State*, 536 S.W.2d 377, 379 (Tex. Crim. App. 1976) ("It is true

---

[7]Morrow also complains he could not be convicted of a first-degree felony offense. We agree. As indicated below, the trial court's judgment is modified to reflect conviction of a second-degree felony.

9

that the court did not make an express finding as it should have as to the prior conviction, but it is obvious from what has been said that the court found from the undisputed evidence that there was a prior conviction and with the agreement of the parties assessed punishment as a second degree felony."); *Garner*, 858 S.W.2d at 659–60 (implying a finding of true to the enhancement where trial court assessed punishment at a range above punishment without enhancement).

A prior conviction may be used to enhance punishment if it is pled in some form, but it need not be pled in the indictment. *Villescas v. State*, 189 S.W.3d 290, 292 (Tex. Crim. App. 2006) (citing *Brooks v. State*, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997)). When seeking to enhance punishment, it is the State's burden to show that the prior conviction was final under the law and that appellant was the person previously convicted of that offense. *Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981). However, when a defendant pleads "true" or "guilty" to the enhancement allegations, he satisfies the State's burden of proof. *Ex parte Sewell*, 742 S.W.2d 393, 396 (Tex. Crim. App. 1987); *Harvey*, 611 S.W.2d at 111; *Dinn v. State*, 570 S.W.2d 910, 915 (Tex. Crim. App. [Panel Op.] 1978) (when defendant pleads "true" to enhancement paragraph, State's burden of proof is satisfied as plea of "true" is sufficient proof). When enhancement paragraphs are proven, punishment at the enhanced level is mandatory. *See Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984).

Before Morrow pled true to the enhancement, the trial court admonished, "Do you understand that if you plead true, I have to find that allegation to be true, and it does raise the range

10

of punishment from 5 years on the low end up to 99 years or life on the high end." The court again clarified, "If you plead true, I would find the allegation to be true." Morrow indicated his understanding, and centered his closing arguments upon the assumption that the court found the enhancement true and that the range of punishment was as the court admonished.

Had Morrow preserved error upon this issue, we would nevertheless find that the record reflected an implied finding of true to the enhancement paragraph based on Morrow's plea of true.

We overrule Morrow's last point of error.

## III. Modification

The Texas Rules of Appellate Procedure give this Court authority to modify judgments to make the record speak the truth when the matter has been called to our attention by any source. TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.).

Burglary of a habitation is a second-degree felony except in circumstances not applicable here. TEX. PENAL CODE ANN. § 30.02(c)(2) (Vernon 2003). If it is shown at trial for a second-degree felony that the defendant had previously been convicted of another felony, punishment can fall within the range prescribed for a first-degree felony. TEX. PENAL CODE ANN. § 12.42(b) (Vernon Supp. 2010). This procedure was used to enhance Morrow's punishment range. However, this procedure does not increase the level of the original offense.

11

The State agrees that "[t]he judgment described the offense as a first degree felony, and should have described a second degree felony." The State also contends:

- "The judgment recites that the offense was 'Burglary of a Habitation Intend Other Felony'; and should read 'Burglary of a Habitation, with Intent to Assault.'"
- "The judgment refers to 30.02(d) ('other felony') of the Texas Penal Code, instead of 30.02 (a–c) ('burglary of a habitation.')[.]"
- "The plea to the first enhancement paragraph should read, 'True' rather than N/A."
- "The finding on the first enhancement paragraph is listed as N/A. The Trial Court stated, before the Appellant entered his plea to the enhancement allegation, 'If you plead true, I would find the allegation to be true.'" "On the basis of the Judge's statement, the State avers . . . the judgment should be reformed to conform to the intention of the Trial Court."[8]

We find the State's suggested modification of the trial court's judgment is necessary to make the record speak the truth. TEX. R. APP. P. 43.2; *French*, 830 S.W.2d at 609; *Battle v. State*,

---

[8]It is apparent that the trial court believed Morrow's plea of "true" could be used as an indication that he attempted to commit felony assault, an allegation not contained within the State's indictment. With respect to the degree of offense for burglary of a habitation, the Texas Penal Code states:

> (c) Except as provided in Subsection (d), an offense under this section is a:
>> (1) state jail felony if committed in a building other than a habitation; or
>> (2) felony of the second degree if committed in a habitation.
> (d) An offense under this section is a felony of the first degree if:
>> (1) the premises are a habitation; and
>> (2) any party to the offense entered the habitation with intent to commit a
> felony other than felony theft or committed or attempted to commit a felony other than
> felony theft.

TEX. PENAL CODE ANN. § 30.02(c)(2). The judgment of conviction lists the "Statute for Offense" as Section 30.02(d). In order for Section 30.02(d) to apply, Morrow must have possessed the intent to commit a felony.

Assault is a class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against a person whose relationship to or association with the defendant is described by Sections 71.0021(b), 71.003, or 71.005, Texas Family Code, "if . . . it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, Chapter 19, or Section 20.03, 20.04, 21.11, or 25.11 against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code . . . ." TEX. PENAL CODE ANN. § 22.01(b)(2)(A); TEX. FAM. CODE ANN. § 71.0021 (Vernon 2008) (defining dating relationship). Proof that the intended assault would have been a third-degree felony, rather than a misdemeanor, would have raised the level of the burglary to a first-degree felony. This first-degree felony was not included in the indictment and the State has not sought its application.

12

No. 06-07-00148-CR, 2008 WL 482343, at *3 (Tex. App.—Texarkana Feb. 25, 2008, no pet.) (mem. op., not designated for publication) (modifying judgment to reflect proper statute under which defendant should have been convicted); *Gray v. State*, 628 S.W.2d 228, 233 (Tex. App.—Corpus Christi 1982, pet. ref'd).

We hereby modify the trial court's judgment to reflect conviction of burglary of a habitation, with intent to assault, under Section 30.02(a-c) of the Texas Penal Code. The degree of offense is modified to reflect the conviction to be a second-degree felony and the plea to the first enhancement, as well as the court's finding, is modified to "True."

## IV. CONCLUSION

We affirm the trial court's judgment, as modified.

Bailey C. Moseley
Justice

Date Submitted: March 10, 2011
Date Decided: March 15, 2011

Do Not Publish