

**NUMBER 13-11-00385-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**EDUARDO RUTH JR.,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                 **Appellee.**

---

### On appeal from the 107th District Court
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Garza**

Appellant, Eduardo Ruth Jr., was convicted of possessing less than one gram of a controlled substance, namely heroin, a state jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(2), 481.115(b) (West 2010). The offense was enhanced to a third-degree felony due to a finding by the jury that Ruth had previously been finally convicted of two state-jail felonies. *See* TEX. PENAL CODE ANN. § 12.425(a) (West Supp.

2011). The jury assessed punishment at ten years' imprisonment. On appeal, Ruth contends that (1) statements he made to police were inadmissible because he had not been given *Miranda* warnings, and (2) the trial court erred when it allowed the State to file a notice of intent to seek enhancement of punishment on the day of trial. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Ruth was initially indicted on October 27, 2010 on one count of possessing less than one gram of heroin, a state jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(2), 481.115(b). On March 29, 2011, the State filed a notice of its intent to seek enhancement of punishment, alleging that Ruth had been convicted in 2004 of felony evading arrest. *See* TEX. PENAL CODE ANN. § 38.04(a) (West Supp. 2011). On May 9, 2011, the day trial was set to commence, the State filed an amended notice of intent to seek enhancement. The amended notice abandoned the allegation that Ruth had been previously convicted of felony evading arrest, and instead alleged that Ruth had been convicted in 2001 on two counts of state-jail felony theft. *See id.* § 31.03(a), (e)(4)(A) (West Supp. 2011); *see also id.* § 12.425(a). Defense counsel objected to the amended enhancement notice, arguing that Ruth had relied on the previous notice in deciding to proceed to trial rather than to enter a plea agreement. Defense counsel asked the trial court to strike the amended enhancement notice, or, in the alternative, to grant a continuance so that he could prepare a defense to the newly alleged enhancement paragraphs. The trial court denied both requests.

At trial, Brownsville, Texas police officer Luis Velasquez testified that, on August 27, 2010, he observed a vehicle with no front license plate and with an unrestrained infant in the front seat. The officer conducted a traffic stop and, when he stepped out of

2

his patrol unit to approach the vehicle, he noticed that the driver was about to exit the vehicle, so he moved in front of the driver's door to prevent him from exiting. The driver—Ruth—then gave his name and date of birth but did not produce a driver's license. According to Officer Velasquez, Ruth appeared "nervous and jittery."

Officer Velasquez returned to his patrol unit and determined that there was an outstanding warrant for Ruth's arrest. The officer then arrested Ruth and performed a custodial search of Ruth's person. Officer Velasquez testified:

> Upon checking the—his pockets, I noticed a little bulge in his coin pocket. I asked him what it was,[1] and he was kind of hesitant, so I took it out. . . . I discovered a plastic wrapper with foil paper inside his coin pocket. . . . It's known to me by my field experience of 13 years I've dealt with it before that it contains heroin.

After Officer Velasquez pulled the package out of Ruth's pocket, Ruth exclaimed: "I'm fucked, right, sir?" Officer Velasquez then asked him "[W]hy?" Ruth replied, "Because of the heroin. I'm trying to change my life." According to Officer Velasquez, when he later transported Ruth to jail, Ruth asked "[i]f I [i.e., Officer Velasquez] could run fast . . . and I asked him why; and he stated because he was about to [run], but I got in between him and the door."

Officer Velasquez did not recall advising Ruth of his *Miranda* rights at any time. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Defense counsel moved to suppress evidence of Ruth's statements on that basis and objected to the admissibility of the statements under Texas Code of Criminal Procedure article 38.22 and various provisions of the United States and Texas Constitutions. *See* U.S. CONST. amends. IV, V, VI, XIV; TEX. CONST. art. I, §§ 9, 10, 19; TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3

---

[1] On cross-examination, Officer Velasquez stated that he did not recall whether he initially asked Ruth what was in his pocket.

3

(West 2011). The trial court denied the motion and overruled the objection.

After less than one day of testimony, the parties rested and Ruth was convicted of the charged offense. Prior to the punishment phase, defense counsel again asked for a continuance in order to prepare a defense to the new allegations made in the State's amended enhancement notice. The trial court denied the request. The jury found both amended enhancement paragraphs to be true and sentenced Ruth to ten years' imprisonment, the maximum permissible term of imprisonment for a third-degree felony. *See* TEX. PENAL CODE ANN. § 12.34(a) (West 2011). This appeal followed.

## II. DISCUSSION

### A. Admission of Custodial Statements

By his first issue, Ruth contends that the trial court erred in denying his motion to suppress the statements he made to Officer Velasquez after being arrested. By his second issue, he argues that the trial court erred in subsequently admitting the evidence. We address the issues together.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). In conducting such a review, we employ a bifurcated standard. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc) (citing *Guzman v. State*, 955 S.W.2d 85, 88 (Tex. Crim. App. 1997) (en banc)). We give almost total deference to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman*, 995 S.W.2d at 89). However, we review de novo pure questions of law and mixed questions of law and fact that do not depend upon credibility and demeanor. *Id.*; *Guzman*, 995 S.W.2d at 89.

4

Subsection 3(a) of article 38.22 of the code of criminal procedure provides:

No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1)     an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2)     prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above[2] and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3)     the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

(4)     all voices on the recording are identified;  and

(5)     not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a).  Subsection 3(c) of that article provides:

Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

---

[2] The warnings required by subsection 2(a) of article 38.22 are as follows:

(1)   [the accused] has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2)   any statement he makes may be used as evidence against him in court;

(3)   he has the right to have a lawyer present to advise him prior to and during any questioning;

(4)   if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5)   he has the right to terminate the interview at any time[.]

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a) (West 2011).  With the exception of number five, these are the same warnings as required under *Miranda.  See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

*Id.* art. 38.22, § 3(c).  Section 5 of that article states:

> Nothing in this article precludes the admission . . . of a statement that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law.

*Id.* art. 38.22, § 5; *see Fischer v. State*, 252 S.W.3d 375, 379, n.11 (Tex. Crim. App. 2008) (recognizing that "*res gestae*," literally translated as "things done," is "an imprecise Latin legalese term" which has been used to describe several different types of "unreflective statements" which are hearsay exceptions under the rules of evidence).

The State does not dispute that the challenged statements were given by Ruth while he was in custody.  Indeed, the evidence was uncontroverted that Ruth gave the statements after being arrested and handcuffed by Officer Velasquez.  Instead, the State argues that the statements were admissible because they were not the result of an "interrogation."  *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) ("[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.").  Ruth contends that his statements were the result of an interrogation because Officer Velasquez asked Ruth "Why?" after Ruth asked "I'm fucked, right, sir?"[3]

We need not address whether Ruth's statements were made under interrogation because, even assuming that they were, the exception set out in subsection 3(c) of

---

[3] We also note that, according to Officer Velasquez's own testimony, he asked Ruth what was in his pocket prior to Ruth giving any of the challenged statements.

6

article 38.22 applies to those statements. Under that subsection, oral statements asserting facts or circumstances establishing the guilt of the accused are admissible if, at the time they were made, the statements contained assertions unknown by law enforcement but later corroborated. *Woods v. State*, 152 S.W.3d 105, 117 (Tex. Crim. App. 2004) (citing *Moore v. State*, 999 S.W.2d 385, 400 (Tex. Crim. App. 1999)). Such oral statements need only circumstantially demonstrate the defendant's guilt. *Id.* (citing *Moore*, 999 S.W.2d at 400–01). If an oral statement contains even a single assertion of fact found to be true and conducive to establishing the defendant's guilt, then the statement is admissible in its entirety, notwithstanding the lack of any *Miranda* warnings. *Id.* (citing *Moore*, 999 S.W.2d at 401); *see Port v. State*, 791 S.W.2d 103, 108 (Tex. Crim. App. 1990) (defendant's custodial statement that he shot the victim twice in the head with his .22 caliber pistol, made without *Miranda* warnings, was admissible under subsection 3(c) because it was later "found to be true" according to autopsy and ballistics evidence); *Santana v. State*, 714 S.W.2d 1, 14 (Tex. Crim. App. 1986) (defendant's custodial statement as to the location of weapons he used to commit murder, made without *Miranda* warnings, was admissible under subsection 3(c), despite the fact that his co-defendant already gave police this information, because police were unable to verify the truth of the statement until the weapons were actually discovered); *cf. Dansby v. State*, 931 S.W.2d 297, 299 (Tex. Crim. App. 1996) (defendant's custodial statements that he was driving the car involved in a fatal accident and had been drinking most of the day, made without *Miranda* warnings, were not admissible under subsection 3(c) because police had already been informed by other witnesses that defendant was drinking and driving); *Almanza v. State*, 839 S.W.2d 817, 821 (Tex. Crim. App. 1992) (defendant's custodial statement that that a piece of paper later found

7

to contain heroin was his "personal stuff," made without *Miranda* warnings, was not admissible under subsection 3(c) because it was a mere admission of guilt and was not "found to be true").

Here, Ruth's statement "Because of the heroin" indicated that the substance obtained by Officer Velasquez was indeed heroin. This assertion of fact was conducive to establishing Ruth's guilt, was unknown to law enforcement,[4] and was later proven at trial. Accordingly, Ruth's entire statement was admissible under article 38.22. *See id.*[5]

We overrule Ruth's first two issues.

## B. Amended Enhancement Notice and Motions for Continuance

By his third issue, Ruth argues that the trial court erred in denying his motions to strike the State's amended enhancement notice and his motions for continuance to prepare a defense to the new allegations contained in that notice.

The Texas Court of Criminal Appeals addressed a similar issue in *Villescas v. State*, 189 S.W.3d 290 (Tex. Crim. App. 2006). In that case, the appellant was notified of the State's intent to introduce an enhancement allegation only six days before trial. *Id.* at 291. At the punishment phase of the trial, defense counsel objected to the State's notice as untimely. *Id.* The trial court ordered a continuance and resumed the

---

[4] Officer Velasquez testified that "[i]t was known to me" that the package contained heroin; however, this was based only on his field experience and could not be verified as true until chemical analysis was performed. *See Santana v. State*, 714 S.W.2d 1, 14 (Tex. Crim. App. 1986) (holding that subsection 3(c) exception applied to defendant's statement regarding location of murder weapons, even though a co-defendant had already told police of the location, because police could not verify the truth of the statements until the weapons were actually discovered). Accordingly, the fact that the package contained heroin was "unknown to law enforcement" at the time Ruth made his statement. *See id.*

[5] As noted, Ruth's counsel objected at trial to the admission of his statements on the basis of article 38.22 as well as various provisions of the United States and Texas Constitutions. However, on appeal, Ruth argues only that the trial court's ruling violated the statute; he does not argue that the ruling violated his rights under either constitution. We therefore do not address the unraised issue of whether the ruling, despite complying with the code of criminal procedure, was nevertheless unconstitutional.

8

punishment phase one week later. *Id.* Ultimately, the trial court found the enhancement allegation true and sentenced the appellant in accordance therewith. *Id.* On appeal, the El Paso Court of Appeals concluded that the State's notice was untimely and, after conducting the harm analysis prescribed by rule for non-constitutional error, *see* TEX. R. APP. P. 44.2(b), found that the appellant was "substantially harmed" by the trial court's decision to allow the enhancement because the sentence imposed was outside the punishment range for the unenhanced offense. *Villescas*, 189 S.W.3d at 292.

The court of criminal appeals reversed. *Id.* at 292–95. The Court first held that the notice requirement for enhancement allegations is of constitutional origin, and the court of appeals therefore erred in conducting a harm analysis appropriate to non-constitutional error. *Id.* at 294 ("The ultimate question is whether constitutionally adequate notice was given."). The Court nevertheless found that there was no error because the State's notice was not untimely. *Id.* Instead, the Court concluded that "when a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment phase" satisfies the requirements of both the United States and Texas Constitutions. *Id.* The Court noted:

> [A]ppellant in this case had no defense to the enhancement allegation—he stipulated to the prior conviction. Nor did he suggest that a continuance was necessary to discover or prepare a defense, beyond the seven day continuance he had already received. Appellant received substantially more than the notice minimally required to satisfy due process. He was given notice six days before the beginning of trial, and he had an additional seven day continuance during the punishment hearing.

*Id.* at 295; *see Oyler v. Boles*, 368 U.S. 448, 452 (1962) (holding that "a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist

9

charge even if due process does not require that notice be given prior to the trial on the substantive offense").

The State relies on *Villescas* in contending that its notice in the instant case passed constitutional due process muster. However, the facts in *Villescas* are distinguishable from those in case at bar for several reasons:

- Villescas was notified of the State's enhancement allegations six days prior to trial; Ruth was notified only on the morning that trial was set to begin, which was only one day prior to the commencement of the punishment phase.

- Villescas was given a seven-day continuance at the beginning of the punishment phase; Ruth's multiple requests for a continuance were denied.

- Villescas never suggested that a continuance was needed in order to prepare a defense to the enhancement allegation; Ruth's counsel repeatedly suggested that he needed additional time to prepare.

- Villescas "stipulated to the prior conviction"; Ruth did not.

The State argues that its original notice of enhancement, filed over one month prior to trial, put Ruth on notice that the State would be seeking to enhance the punishment range should he be found guilty. The State also notes that Ruth's counsel had the opportunity, well before trial, to review the State's entire case file, which included information on all of Ruth's prior convictions. Finally, the State notes that it also filed, on March 29, 2011, a separate notice that it would seek to use evidence of extraneous offenses at trial. That notice listed nine different offenses of which Ruth had been previously convicted, including the two felony theft convictions for which enhancement was eventually sought. The State argues that Ruth and his counsel

10

therefore had ample notice of the theft convictions and so his due process rights were not violated.

We disagree. The pertinent issue is not whether Ruth and his counsel were aware of the mere existence of the prior theft convictions; evidently, they were aware of those convictions by virtue of the State's extraneous offense notice (or they were at least constructively aware due to the State's open file policy). Rather, the dispositive issue is whether Ruth and his counsel were given adequate notice that these particular convictions would be used to enhance the punishment range in this case. The State's March 29, 2011 enhancement notice advised Ruth that his 2004 evading arrest conviction would be used for enhancement purposes, but that did not provide notice— either actual or constructive—that the 2001 theft convictions would be so used.[6] The amended enhancement notice, which was provided to Ruth and his counsel only one day prior to the beginning of the punishment phase, was inadequate and unreasonable in light of counsel's repeated requests for a continuance in order to prepare a defense to the amended enhancement paragraphs. *Cf. Villescas*, 189 S.W.3d at 294 (noting that "when a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment phase" satisfies due process).[7]

---

[6] It is noteworthy that the original March 29, 2011 enhancement notice only alleged that Ruth had previously been convicted of one felony. Under penal code section 12.425, a non-aggravated state-jail felony, such as the one with which Ruth was charged, may only be enhanced by a showing that either: (1) the defendant had previously been convicted of two state jail felonies, in which case the punishment is enhanced to that of a third-degree felony; or (2) the defendant had previously been convicted of two felonies other than state-jail felonies, and the second offense occurred after the first conviction became final, in which case the punishment is enhanced to that of a second-degree felony. TEX. PENAL CODE ANN. § 12.425(a), (b). Therefore, Ruth's counsel arguably did not need to prepare a defense to the allegation contained in the March 29, 2011 enhancement notice because that allegation, even if proven true, was insufficient to enhance Ruth's punishment.

[7] Ruth has not explicitly set forth a "defense to the enhancement allegation[s]." *See Villescas v.*

11

We conclude that the State did not provide constitutionally adequate notice that it would be using Ruth's 2001 theft convictions to enhance his punishment. The trial court therefore erred by refusing to either (1) strike the State's amended enhancement notice or (2) grant Ruth's motion for continuance. Moreover, employing the standard appropriate for constitutional error, we conclude that this error was reversible because we cannot determine beyond a reasonable doubt that the error did not contribute to Ruth's punishment. *See* TEX. R. APP. P. 44.2(a); *Villescas*, 189 S.W.3d at 294.

Ruth's third issue is sustained.

### III. CONCLUSION

We reverse the judgment of the trial court as to punishment and remand for a new trial, consistent with this opinion, on punishment only. See TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (West Supp. 2011). The remainder of the judgment is affirmed.

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
29th day of August, 2012.

---

*State*, 189 S.W.3d 290, 294 (Tex. Crim. App. 2006). However, we do not believe that the *Villescas* Court held, either implicitly or explicitly, that an appellant must show a viable defense to enhancement allegations in order to sustain a claim of insufficient notice. *See id.* ("The ultimate question is whether constitutionally adequate notice was given."). Moreover, as noted, under the more lenient standard for reversible error prescribed for constitutional error, we must reverse unless we conclude beyond a reasonable doubt that the error did not contribute to the punishment. *See* TEX. R. APP. P. 44.2(a). The mere fact that Ruth has not explicitly set forth a viable defense to the allegations contained in the amended enhancement notice does not show, beyond a reasonable doubt, that the punishment would have been the same even if the notice had been timely. Therefore, we must reverse the punishment. *See id.*